1 F.3d 1306
 62 USLW 2062, Fed. Sec. L. Rep. P 97,661
 Richard A. McGUIRE, individually and derivatively on behalf
of John P. Tilden, Ltd., Plaintiff-Appellee, Cross-Appellant,
v.
RUSSELL MILLER, INC. and Russell Miller, Inc. of New York, Defendants,
J. Robert Wilson, Gerald I. Benson, John J. McGowan and John
P. Tilden, Ltd., Defendants-Appellants, Cross-Appellees.
RUSSELL MILLER, INC. OF NEW YORK, Counter-Claimant,
v.
RUSSELL MILLER, INC. and John P. Tilden, Ltd., Counter-Defendants.
 Nos. 1478, 1647, Dockets 93-7011, 93-7031.
 United States Court of Appeals,
Second Circuit.
 Argued May 18, 1993.
Decided July 13, 1993.
 
 William D. Wall, Uniondale, NY (F. Judith Hepworth, Dina Talmor Miller, Farrell, Fritz, Caemmerer, Cleary, Barnosky & Armentano, P.C., of counsel), for defendants-appellants, cross-appellees.
 Frank Ambrosino, Babylon, NY (Irving Like, Reilly, Like, Tenety & Ambrosino, of counsel), for plaintiff-appellee, cross-appellant.
 Before: WINTER and JACOBS, Circuit Judges, and MUKASEY, District Judge.[1]
 MUKASEY, District Judge:
 Defendants appeal and plaintiff cross-appeals from a judgment of the United States District Court for the Southern District of New York (Sweet, J.) that awarded $313,807 to defendants on their counterclaims arising from misrepresentations by plaintiff during negotiation of a merger of two insurance companies--Richard A. McGuire Associates, Inc. ("McGuire"), owned by plaintiff Richard A. McGuire, and John P. Tilden, Ltd. ("Tilden"), one of the defendants. Defendants contend that the judgment does not accurately reflect, and is inconsistent with, the jury's responses on a special verdict form to questions about damages and attorneys' fees. For the reasons stated below, we find that the judgment is consistent with the jury's answers as to damages, but inconsistent with the jury's answer as to attorneys' fees. Therefore, the judgment is affirmed in part, reversed in part, and remanded.
 
 I.
 
 1
 McGuire and Tilden merged on July 31, 1985. To effect the merger, plaintiff Richard A. McGuire received 30 shares--roughly 13 percent--of Tilden stock in return for his 100 percent interest in McGuire. The parties had agreed to this exchange rate based on each side's representations as to the companies' relative values.
 
 
 2
 After the merger, plaintiff worked at Tilden until he was fired on September 18, 1987. On November 16, 1987 plaintiff brought suit in the Southern District of New York, individually and derivatively on behalf of Tilden, to rescind the merger. He alleged that defendants had misrepresented the value of Tilden in violation of Sec. 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), as implemented by Rule 10b-5, 17 C.F.R. Sec. 240.10b-5 (1992). Also, plaintiff asserted state law claims for breach of contract, securities fraud, common law fraud, negligence, and breach of fiduciary duty.
 
 
 3
 Defendants counterclaimed that plaintiff had misrepresented the value of McGuire in violation of Sec. 10(b), and asserted state law counterclaims for breach of warranty, common law fraud, negligent misrepresentation, and breach of indemnity agreement. Judge Sweet dismissed plaintiff's complaint by summary judgment, but reserved defendants' counterclaims for trial.
 
 
 4
 During a six-day trial defendants presented evidence that they had overpaid plaintiff in the merger. On July 8, 1992 the jury awarded $313,807 to defendants. The jury recorded its verdict on a 25-question special verdict form. In response to questions 1-24, the jury computed defendants' damages as follows: (1) no damages for breach of warranty; (2) $108,000 for violations of Rule 10b-5; (3) $51,034 for common law fraud; (4) $24,773 for negligent misrepresentation; and (5) $130,000 for breach of indemnity agreement. The jury reported, as Judge Sweet had instructed, that each award was for damages not included in any other award.
 
 
 5
 The final question, number 25, asked the jury: "When the merger took place, how many shares of John P. Tilden stock was McGuire Associates worth?" The jury responded that McGuire was worth only 10 shares, not the value of 30 shares Tilden expected to receive. At the charging conference Judge Sweet had eliminated the second part of Question 25--"At the time, what was the dollar value of these shares of stock?"--and the jury therefore made no finding with respect to the value of the 10 shares. On July 27, 1992 the district court approved a judgment for $313,807 but refused to award 20 shares of Tilden stock, or the dollar value of those shares. The court found that the jury's award of $313,807 on four of the five counts constituted the entire verdict.
 
 
 6
 Question 22 of the special verdict form asked the jury:
 
 
 7
 "Did McGuire agree, in the Merger Agreement or in the surrounding facts and circumstances, to indemnify Tilden for: the breach of any warranty in connection with the merger agreement; any claim brought against Tilden relating to the Premium Trust Account; or all costs, including attorneys' fees, arising out of any claim arising out of the transaction?"
 
 
 8
 (emphasis added). The indemnification provision of the merger agreement between the parties had provided as follows:
 
 8. Indemnification
 
 9
 8.1 Indemnification by McGuire and the McGuire Shareholder. The McGuire Shareholder hereby agrees to indemnify, defend, and hold Tilden harmless after the Closing Date from and against any all of the following:
 
 
 10
 A. The breach by McGuire of any warranty or representation made by McGuire pursuant to or in connection with this Agreement; ...
 
 
 11
 E. All costs, assessments, judgments and demands (including costs of defense, settlement, compromise, and reasonable attorney's fees) arising out of any claim, or the defense, settlement or compromise thereof, made with respect to paragraphs 8.1A through 8.1D.
 
 
 12
 The jury's affirmative answer to question 22 meant that, based on the indemnification provision, defendants should recover their attorneys' fees.
 
 
 13
 The verdict form did not include a question about the amount of such fees. Rather, question 24 asked: "For what amount, if any, exclusive of attorney's fees must McGuire indemnify Tilden?" (emphasis added). Accordingly, the jury did not compute the amount of fees defendants were entitled to recover. Based on the jury's findings, the district court refused to award attorneys' fees. It held that
 
 
 14
 [w]hile the indemnity provision [of the merger agreement] clearly contemplated inclusion of attorneys' fees, and the jury so held, no proof as to the amount of any fees was presented. No basis, therefore, for such an award was presented.
 
 
 15
 McGuire v. Wilson, No. 87 Civ. 8156, slip op. at 2, 1992 WL 380497 (S.D.N.Y. Dec. 8, 1992).
 
 
 16
 Defendants argue that, based on the jury's response to question 25, they should recover the value on the merger date of 20 shares of Tilden stock--approximately $730,000 based on a valuation admitted into evidence at trial. They argue that the $313,807 award was either part of that value or compensation for separate and distinct losses. Defendants argue further that, based on the jury's response to question 22, they should receive reasonable attorneys' fees. Plaintiff argues that defendants are entitled only to the judgment of $313,807.
 
 II.
 
 17
 These facts and arguments present two questions: (1) should defendants recover more than the $313,807 judgment, so as to account for the value of the 20 shares of Tilden stock they overpaid for McGuire? and (2) should defendants receive attorneys' fees? The answers to those questions depend upon the meaning of the jury's answers to questions on the special verdict form. For the reasons stated below, we find that the district court correctly refused to award additional damages based on the jury's response to question 25, but erred in denying attorneys' fees.
 
 Value of Shares of Tilden Stock
 
 18
 The parties agree that, according to the law of this Circuit, defendants should recover the difference between what they paid for McGuire and what McGuire was actually worth at the time of merger. See, e.g., Sharma v. Skaarup Ship Management Corp., 916 F.2d 820, 825-26 (2d Cir.1990), cert. denied, 499 U.S. 907, 111 S.Ct. 1109, 113 L.Ed.2d 218 (1991). That difference can be computed in one of two ways--directly, based on the misrepresented and actual values of McGuire measured in dollars, or indirectly, based on the misrepresented and actual values of McGuire measured in shares of Tilden stock.
 
 
 19
 The indirect method would have been appropriate if defendants had sought return of Tilden's shares rather than money damages; in that event defendants would have been entitled to the difference between 30 shares of Tilden and the number of shares of Tilden that McGuire was worth at the time of merger. However, defendants abandoned their rescission theory before trial and sought only money damages. The district court held that although "[t]he question of rescission recurred at various times during the trial, ... ultimately Tilden elected to receive damages," McGuire v. Wilson, at 2, and counsel for defendants admitted as much at oral argument.
 
 
 20
 Consequently, Judge Sweet attempted to free the jury from the difficulty of computing damages based solely on the value of shares of Tilden stock. First, he instructed the jury that for each of defendants' five claims the jury should compute the difference between the misrepresented and actual values of McGuire at the time of merger. Second, the special verdict form asked the jury to record that difference for each claim. Third, Judge Sweet cautioned the jury to consider each claim separately and not to award double recovery for any misrepresentation by plaintiff.
 
 
 21
 Moreover, the special verdict form specified an identical list of five misrepresentations for each of the claims for violations of Rule 10b-5, common law fraud, negligent misrepresentation, and breach of the indemnity agreement. For each of those claims, the form asked whether plaintiff had made any or all of the five misrepresentations. Also as to each claim, the form then asked a series of questions about the particular misrepresentation, if any, found to have been made, such as whether it was material and the like. That series of questions concluded with a question about whether the award for each misrepresentation also was compensated in an award for the same misrepresentation as part of another claim. The jury found that plaintiff had made one of the five misrepresentations with respect to each of the above claims, and awarded separate damages in different amounts for each claim. To each question that inquired whether the jury's damage award for a particular claim was based on the same misrepresentation that had given rise to an award for another claim, the jury answered "no."
 
 
 22
 A district court "may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact." Fed.R.Civ.P. 49(a). The purpose of a Rule 49(a) special verdict is to identify the basis for the jury's verdict, and thus to avoid confusion, appellate uncertainty, and the need for additional proceedings. Stewart & Stevenson Services, Inc. v. Pickard, 749 F.2d 635, 644 (11th Cir.1984). "The particular language to be used in written questions put to the jury for a special verdict lies within the discretion of the trial court." Smith v. Lightning Bolt Productions, Inc., 861 F.2d 363, 370 (2d Cir.1988) (citing Cann v. Ford Motor Co., 658 F.2d 54, 58 (2d Cir.1981), cert. denied, 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982)).
 
 
 23
 Defendants contend that the district court erred by not considering the jury's response to question 25 that at the time of merger McGuire was worth only 10 shares of Tilden stock, not 30. We disagree for two reasons. First, the district court found quite properly that question 25 was irrelevant--and the answer to that question superfluous--to the damages verdict, because defendants had abandoned their rescission claim. At the charging conference Judge Sweet eliminated the second half of question 25--relating to the value of Tilden's shares--and he held later that "[i]n view of the absence of any comparative evaluation evidence, [the first half of question 25] became irrelevant in terms of relief and could have properly been stricken." McGuire v. Wilson, at 2.
 
 
 24
 During the charging conference the court and counsel discussed whether to strike question 25. Rule 49(a) provides that, before the jury retires, a party must demand that the special verdict form include any issue that the court omits, or else that party waives the right to a jury trial of that issue. Fed.R.Civ.P. 49(a). Defendants agreed to strike the second half of question 25 at that conference, and may not object now to the decision to strike that part. Having struck the second half of question 25, Judge Sweet properly found that the answer to the first half was irrelevant.
 
 
 25
 Second, even assuming that the first half of question 25 was relevant, the jury's response to that question did not necessitate a judgment for more than $313,807. Although the district court was required to accept the jury's fact findings--including their answer to question 25--and then make additional findings as necessary, see Quaker City Gear Works, Inc. v. Skil Corp., 747 F.2d 1446, 1452 (Fed.Cir.1984), cert. denied, 471 U.S. 1136, 105 S.Ct. 2676, 86 L.Ed.2d 694 (1985), it appears that the district court accepted the damages verdict in questions 1-24 and considered calculating damages based on the answer to question 25, but concluded that the evidence did not support a different award.
 
 
 26
 In evaluating a claim that a jury's answers to questions on a special verdict form are inconsistent, a reviewing court must " 'adopt a view of the case, if there is one, that resolves any seeming inconsistency.' " Brooks v. Brattleboro Memorial Hosp., 958 F.2d 525, 529 (2d Cir.1992) (quoting Fiacco v. City of Rensselaer, New York, 783 F.2d 319, 325 (2d Cir.1986), cert. denied, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987), and citing cases). "If the jury's answers cannot be harmonized rationally, the judgment must be vacated and a new trial ordered." Brooks v. Brattleboro, 958 F.2d at 529 (citing cases).
 
 
 27
 A district court has a duty to reconcile the jury's answers on a special verdict form with any reasonable theory consistent with the evidence, and to attempt to harmonize the answers if possible under a fair reading of those answers. Gallick v. Baltimore & Ohio R.R., 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963); Pierce v. Southern Pacific Transp. Co., 823 F.2d 1366, 1370 (9th Cir.1987). The court must search for a reasonable way to read the verdicts as expressing a coherent view of the case, Toner v. Lederle Lab., 828 F.2d 510, 513 (9th Cir.1987), cert. denied, 485 U.S. 942, 108 S.Ct. 1122, 99 L.Ed.2d 282 (1988), and if there is any way to view a case that makes the jury's answers to the special verdict form consistent with one another, the court must resolve the answers that way even if the interpretation is strained. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962). The district court should refer to the entire case and not just the answers themselves. Royal Cup, Inc. v. Jenkins Coffee Service, Inc., 898 F.2d 1514, 1519 (11th Cir.1990).
 
 We agree with the Eleventh Circuit that:
 
 28
 [o]ur role as an appellate court is to review the record fully in order to ascertain whether the district court's reconciliation of the apparently inconsistent verdict represents a fair and reasonable reading of the case.
 
 
 29
 Id. (citing cases). The district court has "considerable discretion" to dispose of inconsistent special verdicts, especially where, as here, the complaining party accedes to the special verdict form and does not object to the jury's inconsistent responses until after the jury has been discharged. Kavanaugh v. Greenlee Tool Co., 944 F.2d 7, 10 (1st Cir.1991).
 
 
 30
 Defendants assert that the jury, simply by answering "10" to the final question of the eight-page special verdict form, intended to supplement or supersede its detailed findings in the first 24 questions and award additional damages based on the value of Tilden shares. Defendants' explanation of the jury's answer to question 25 is no more likely than several others.
 
 
 31
 Because presumably the jury answered the questions in numerical order--as the special verdict form required--the last answer may well have been a reflection of previous findings in questions 1-24. In other words, the jury could have worked backward from the damages they computed for defendants' five claims to determine that, based on evidence submitted at trial, McGuire was worth only 10 shares of Tilden stock at the time of merger.
 
 
 32
 Defendants argue against such a conclusion, because Trial Exhibit BM--an opinion valuing Tilden--showed that 30 shares of Tilden stock were worth over $700,000 on December 31, 1984. However, Exhibit BM did not resolve the value of Tilden on the merger date, July 31, 1985, seven months later. There is no basis to assume that the value of Tilden stock did not fluctuate while the parties negotiated the merger, during the seven months after the Exhibit BM valuation. Moreover, Exhibit BM is evidence of the value only of Tilden, and the proper measure of damages--the difference between the misrepresented and actual values of McGuire at the time of merger--is based on the value of McGuire, not of Tilden. Therefore, the valuation evidence submitted at trial was inconclusive and not necessarily inconsistent with the judgment.
 
 
 33
 Although defendants should recover the entire difference, at the time of the merger, between the misrepresented and actual values of McGuire, it would be duplicative to award Tilden damages and to order McGuire to return the value of 20 Tilden shares. The jury was told not to award double recovery and said on the verdict form that they did not. The jury's response to question 25 may have been inconsistent with the remainder of the verdict, but the judgment accounts for inconsistencies in the special verdict form, and appears to be a fair and reasonable reading of the facts and the jury's detailed responses to questions 1-24. It appears that the jury found that plaintiff had made one misrepresentation attributable to each claim, awarded damages for each claim based on that single misrepresentation, and stated that each separate award was for damages not compensated by any other award. The judgment is consistent with those findings.
 
 Attorneys' Fees
 
 34
 Defendants argue next that the district court erred by refusing to award attorneys' fees simply because defendants did not submit proof at trial of the amount of such fees. McGuire v. Wilson, No. 87 Civ. 8156, at 2, 1992 WL 380497 Defendants argue that the judgment ignores the jury's finding in question 22 that defendants were entitled to recover attorneys' fees. Plaintiff argues that it was defendants' burden to prove all its contractual damages, including attorneys' fees, by the requisite degree of proof at trial, and that the district court found properly that defendants failed to prove at trial the amount of attorneys' fees. Defendants respond that although plaintiff had the right to have a jury decide whether he was liable for attorneys' fees, once the jury decided that plaintiff was liable, the amount and reasonableness of such fees were questions for the judge, not the jury. Defendants argue that it would have been impossible for them to prove the amount of attorneys' fees at trial, because that amount was still accruing.
 
 
 35
 In federal practice the general rule--known as the "American Rule"--is that each party bears its own attorneys' fees. See, e.g., Chambers v. NASCO, Inc., --- U.S. ----, ----, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991); Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983); Alyeska Pipeline Service Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); 6 James W. Moore et al., Moore's Federal Practice p 54.78 (2d ed. 1993). However, parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law. See Alland v. Consumers Credit Corp., 476 F.2d 951, 956 (2d Cir.1973); United States v. Carter, 217 U.S. 286, 322, 30 S.Ct. 515, 526, 54 L.Ed. 769 (1910). Although a district court has broad discretion in awarding attorneys' fees, and an award of such fees may be set aside only for abuse of discretion, see, e.g., ARP Films, Inc. v. Marvel Entertainment Group, Inc., 952 F.2d 643, 651 (2d Cir.1991); Lerman v. Flynt Distributing Co., 789 F.2d 164, 166 (2d Cir.), cert. denied, 479 U.S. 932, 107 S.Ct. 404, 93 L.Ed.2d 357 (1986), where a contract authorizes an award of attorneys' fees, such an award becomes the rule rather than the exception. See Engel v. Teleprompter Corp., 732 F.2d 1238, 1241 (5th Cir.1984) (reversing district court's denial of attorneys' fees with instructions to determine an appropriate award).
 
 
 36
 At the outset, we note that there was only one discussion at trial of whether defendants had submitted sufficient proof of the amount of their attorneys' fees, or even of whether they were required to submit such proof. That occurred at the charging conference. The district court asked if the indemnity provision in the merger agreement included attorneys' fees, and plaintiffs' counsel admitted that it did. After a brief discussion, the court decided not to ask the jury in question 24 to determine the amount of attorneys' fees. Defendants' counsel said he assumed that if defendants were entitled to attorneys' fees, the amount of fees "will be determined at a later hearing." The district court left that issue unresolved, and said nothing inconsistent with counsel's expressed assumption.
 
 
 37
 Therefore, based on the charging conference, it was not unreasonable for defendants to assume that the court would decide the amount of attorneys' fees at a post-trial hearing if the jury found that plaintiff was liable for attorneys' fees. Defendants certainly were not on notice that they had failed to prove they were entitled to attorneys' fees; neither did the colloquy with the district court at the charging conference give defendants reason to move to reopen their case to prove the amount of fees, as they might have if the discussion had suggested such an insufficiency. If plaintiff is correct that the amount of attorneys' fees was an issue for the jury to determine, then defendants should have been made aware, when the issue arose at the charging conference, that they were required to prove that amount. On the other hand, if the amount of attorneys' fees was an issue to be determined after trial, then the district court should have initiated a procedure to determine that amount.
 
 
 38
 This Circuit has never decided what procedure a district judge should follow in deciding a contractual claim for attorneys' fees. Counsel for both sides agreed at oral argument that the common practice in the district courts of this Circuit is for the judge to determine the amount of attorneys' fees owed pursuant to an indemnification agreement after the liability for such fees is decided at a trial, whether bench or jury. See, e.g., Diamond D Enterprises USA, Inc. v. Steinsvaag, 979 F.2d 14, 18 (2d Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993) (citing cases). Following common practice, today we make law out of what was previously common sense: when a contract provides for an award of attorneys' fees, the jury is to decide at trial whether a party may recover such fees; if the jury decides that a party may recover attorneys' fees, then the judge is to determine a reasonable amount of fees. For reasons discussed below, this rule would not apply to a contract for legal services between a client and a lawyer.
 
 
 39
 This rule follows from the Seventh Amendment's provision that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." The right to a jury trial in federal court is a matter of federal law. Cutlass Productions, Inc. v. Bregman, 682 F.2d 323, 325 n. 5 (2d Cir.1982) (citing Simler v. Conner, 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1963) (per curiam)). Although the right to a jury trial depends primarily on whether the action is "legal" or "equitable," the Supreme Court has recognized that the right extends beyond the common-law forms of action recognized in 1791:
 
 
 40
 By common law, [the Framers of the Amendment] meant ... not merely suits, which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered....
 
 
 41
 Curtis v. Loether, 415 U.S. 189, 193, 94 S.Ct. 1005, 1007-08, 39 L.Ed.2d 260 (1974) (quoting Parsons v. Bedford, 28 U.S. (3 Pet.) 433, 446-47, 7 L.Ed. 732 (1830) (Story, J.) (emphasis in original)).
 
 
 42
 Therefore, whether plaintiff had a right to have a jury determine the amount of attorneys' fees he owed to defendants depends on whether an action to recover attorneys' fees is "legal" or "equitable." In a 1991 case involving a contractual provision for payment of reasonable attorneys' fees, the Fifth Circuit held that "[s]ince there is no common law right to recover attorneys fees, the Seventh Amendment does not guarantee a trial by jury to determine the amount of reasonable attorneys fees." Resolution Trust Corp. v. Marshall, 939 F.2d 274, 279 (5th Cir.1991) (rejecting claim that district court improperly determined amount of attorneys' fees owed under guaranty agreement rather than submitting question to jury).
 
 
 43
 We agree with the result reached in Resolution Trust Corp. v. Marshall, but disagree with that Court's finding that within the meaning of the Seventh Amendment there is no common law right to recover attorneys' fees pursuant to a contract. Id., 939 F.2d at 279; see Mt. Everest Ski Shops v. Ski Barn, Inc., 736 F.Supp. 531, 532 (D.Vt.1989). Rather, we hold that an action to recover attorneys' fees pursuant to a contract presents traditional common-law contract issues which should be submitted to a jury--and which were properly submitted to the jury in this case--but that the subsequent determination of the amount of attorneys' fees owed presents equitable issues of accounting which do not engage a Seventh Amendment right to a jury trial.
 
 
 44
 The Supreme Court has recognized the difference between the "legal" and "equitable" issues in actions to recover attorneys' fees. In Simler v. Conner, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963), the Supreme Court held that "a suit to determine and adjudicate the amount of fees owing to a lawyer by a client under a contingent fee retainer contract [is] a traditionally legal action." Id., 372 U.S. at 223, 83 S.Ct. at 611. In that case, the client had admitted that he was obligated to pay his attorney a "reasonable" fee under a contingent fee retainer contract, but had sought a jury trial of the amount of his obligation. The attorney had claimed that a subsequent contract provided for a fee of 50 percent of the client's ultimate recovery, and disputed the jury trial requirement. The Court ruled that the dispute about the terms of the contingent fee retainer contract depended on traditional common-law contract issues that should have been submitted to a jury.
 
 
 45
 In extending the jury trial right to the issue of the the amount of the fee, the Court relied on two cases--Stanton v. Embrey, 93 U.S. 548, 23 L.Ed. 983, 3 Otto 548 (1876) and Trist v. Child, 88 U.S. 441, 22 L.Ed. 623, 21 Wall. 441 (1874)--both of which also involved disputes about an attorney's contingent fee contract. It appears that since Simler v. Conner, the Supreme Court has not extended the right to a jury trial as to the amount of attorneys' fees beyond the limited context of a dispute about a contingent fee contract. Simler v. Conner stands principally for a rule not at issue in this case--that federal law controls availability of a jury trial even when state law controls the substance of the case--and can be distinguished as saying only that the dispute about a contingency fee contract in that case was the type of breach of contract suit, by one party to a services contract against another for damages, which was traditionally an action at law and thus triable to a jury under the Seventh Amendment.
 
 
 46
 In this case, plaintiff agreed to indemnify defendants for "reasonable attorneys' fees ... arising out of any claim, or the defense, settlement or compromise thereof, made with respect to" misrepresentations by plaintiff in connection with the merger agreement. Accordingly, defendants' counterclaim for attorneys' fees was a claim for a contractual "legal right," and plaintiff had the right to have a jury decide whether defendants should recover attorneys' fees under the agreement. However, the subsequent action in this case to determine a reasonable amount of attorneys' fees owed was not an action to enforce "legal rights" pursuant to a contract; rather, such an action was equitable in nature. That action did not involve "a suit to determine the amount of fees owing to a lawyer by a client under a contingent fee retainer contract." See Simler v. Conner, 372 U.S. at 223, 83 S.Ct. at 611.
 
 
 47
 The Supreme Court has held that in determining whether an issue is "legal" or "equitable" under the Seventh Amendment, a court should consider, among other things, "the practical abilities and limitations of juries." Ross v. Bernhard, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). To compute a reasonable amount of attorneys' fees in a particular case requires more than simply a report of the number of hours spent and the hourly rate. The calculation depends on an assessment of whether those statistics are reasonable, based on, among other things, the time and labor reasonably required by the case, the skill demanded by the novelty or complexity of the issues, the burdensomeness of the fees, the incentive effects on future cases, and the fairness to the parties. Such collateral issues do not present the kind of common-law questions for which the Seventh Amendment preserves a jury trial right. In fact, in Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court refused to extend the American Rule that parties pay their own fees absent statutory authorization precisely because of the equitable considerations involved in computing a reasonable amount of attorneys' fees.
 
 
 48
 Accordingly, although plaintiff had the right to a jury decision on whether defendants should recover attorneys' fees, plaintiff did not have the right to a jury decision on a reasonable amount of attorneys' fees. Unlike the client in Simler v. Conner, no party here claimed that the contract directed the amount of attorneys' fees to be awarded by specifying a percentage of an ascertainable sum. Therefore, the district court, in its equitable role, should have determined a reasonable fee.
 
 
 49
 Moreover, the Supreme Court has held that a judgment is "final" even though the court has yet to determine attorneys' fees, and even if those fees are sought pursuant to a contract. Budinich v. Becton Dickinson and Co., 486 U.S. 196, 202-03, 108 S.Ct. 1717, 1722, 100 L.Ed.2d 178 (1988); see also First Nationwide Bank v. Summer House Joint Venture, 902 F.2d 1197, 1199 (5th Cir.1990). Therefore, Budinich supports the proposition that the amount of attorneys' fees, even when awarded under a contract, is a post-judgment matter collateral to a decision on the merits. Accordingly, although a jury may determine the amount of attorneys' fees owed pursuant to a contract--in fact, parties may agree explicitly that the amount of attorneys' fees is an issue to be decided by a jury--there is no absolute right to have a jury determine the amount.
 
 
 50
 The utility of the above rule is illustrated by this appeal. First, the result of applying it here is fair. All the elements justifying an award of attorneys' fees were before the district court here. The parties do not dispute that the indemnification clause in the merger agreement, which the parties arrived at through arm's-length bargaining, gave defendants the right to collect reasonable attorneys' fees. Compare Engel v. Teleprompter Corp., 732 F.2d at 1240. The merger agreement and the indemnification clause were in evidence, the district court instructed the jury on the award of attorneys' fees, and the jury found that defendants should receive attorneys' fees. It would be unfair to deny that award merely because defendants had decided, based on common practice and with no reason to do otherwise, to wait until after a verdict to submit proof of the amount of attorneys' fees.
 
 
 51
 Second, the rule is efficient. District judges routinely compute the amount of attorneys' fees owed after trial. Judges are better equipped than juries to make computations based on details about billing practices, including rates and hours charged on a particular case. In contrast, if the parties submitted evidence of the amount of attorneys' fees to a jury at trial, the time spent acculturating the jury to the mysteries of attorneys' hourly rates and incidental charges, and cross-examining about those matters, would likely increase fees and generate inconsistent awards.[2] Moreover, the courts can streamline proof of the amount of attorneys' fees by waiting until after a verdict when only prevailing parties will submit proof of the amount of attorneys' fees; if the jury finds that a party is not entitled to fees, the amount need not be proved.
 
 
 52
 The concurring opinion suggests an additional practical difficulty that would exist if the jury that tried liability for fees also had to determine the amount of those fees; that jury would have to "look behind the curtain of a case" to examine motions, settlement efforts, and the like. That difficulty could be mitigated if not eliminated by bifurcating the issues of liability for fees and the amount of fees, the procedure followed in a case cited in the concurring opinion, F.H. Krear & Co. v. Nineteen Named Trustees, 776 F.2d 1563, 1563-64 (2d Cir.1985). Nonetheless, such a step does present an additional obstacle.
 
 
 53
 Finally, although the judge can compute the amount of attorneys' fees after a trial with perfect hindsight, the jury would have to keep a running total of fees as they accrued through summations and then predict future fees from post-trial proceedings and motions. The prospect of such a trial evokes images of an attorney struggling to prove the amount of fees to which he is entitled, but never being able to do so because he must prove the value of his last words even as he speaks them, and also the value of words yet unuttered and unwritten.
 
 
 54
 Once the jury decided that plaintiff was liable for attorneys' fees, the district court should have determined the amount of such fees. The amount of attorneys' fees owed was not an issue of fact that required proof at trial; it was an issue for the court to review after a finding of liability. Accordingly, we reinstate the jury's award of attorneys' fees to defendants, and remand to the district court the question of the amount of those fees.
 
 
 55
 We have considered the remaining arguments of the parties on this appeal and cross-appeal and find them without sufficient merit to warrant discussion.
 
 
 56
 The judgment of the district court is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.
 
 JACOBS, Circuit Judge, concurring:
 
 57
 I agree with the Court's opinion concerning the value of the shares of Tilden stock. I also agree that, because of "the practical abilities and limitations of juries," see Ross v. Bernhard, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970), the trial court rather than the jury should determine the reasonable attorney's fees owing under the contract in this case. I concur separately because, in my view, the only limitation on the practical ability of the jury to decide reasonable attorney's fees in this case is that jurors cannot be expected to look behind the curtain of a case presented to them on the merits in order to decide the reasonable compensation of counsel. For jurors, the attorney's fee issue will almost always be a different and disconcerting way of looking at the merits. Prevailing counsel should not have to disclose to the jury the need for in limine motions, the protective efforts employed in discovery, the pursuit of settlement, or the toil and calculation required to build a case that may have been promoted to the same jury as simple or self-evident. For these reasons, I agree that the amount of attorney's fees reasonably incurred in a case tried to a jury cannot practically be decided by the jury and therefore presents an equitable question.
 
 
 58
 The Court's opinion proceeds along broader lines, however, and can be construed to foreclose a jury trial concerning attorney's fees in other circumstances as well. Yet, as the Court's opinion states, a lawyer's fee claim against the lawyer's client is undoubtedly a jury question. See Simler v. Conner, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963). I think that the logic of Simler may require a jury trial in other kinds of free-standing claims for attorney's fees as well.
 
 
 59
 This appeal does not require us to decide the availability of a jury trial for fees where all of the other aspects of the same case are disposed of by motion or by another jury, or where a claimant seeks contractual indemnification for fees incurred in a separate litigation against a third party. Compare F.H. Krear & Co. v. Nineteen Named Trustees, 776 F.2d 1563, 1564 (2d Cir.1985) (per curiam) (stating in dicta: "[W]e call the district court's attention to the proposition that the parties have a right to a jury trial on the fees issue provided that such a trial is properly demanded and the right not waived") and A. Kush & Associates v. American States Insurance Co., 927 F.2d 929, 933-34 (7th Cir.1991) (affirming jury's dollar award of reasonable attorney's fees) with Cheek v. McGowan Elec. Supply Co., 511 So.2d 977 (Fla.1987) ("[C]ontractually authorized attorney's fees.... [are] ancillary to the claim for damages.... [and are] not part of the substantive claim ...").
 
 
 
 [1]
 Honorable Michael B. Mukasey, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [2]
 We do not hold that the amount of attorneys' fees is too complex for juries to decide; rather, we hold that the better practice is for the judge to determine the amount. This Circuit first discussed whether some actions were too complex to be tried to a jury in Berkey Photo, Inc. v. Eastman Kodak Co., 603 F.2d 263, 279 n. 20 (2d Cir.1979), cert. denied, 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980), and since has refused to uphold the so-called "complexity exception" to the Seventh Amendment. See City of New York v. Pullman Inc., 662 F.2d 910, 919 (2d Cir.1981). "The framers of the Bill of Rights expected that juries would be capable of resolving disputed issues of fact in the federal courts. Even in civil litigation, where non-perspicuous issues and abstruse evidence proliferate, we have never acknowledged a 'complexity exception' to the right to a jury trial." United States v. DiDomenico, 985 F.2d 1159, 1170 (2d Cir.1993) (citing United States v. Torniero, 735 F.2d 725, 734 (2d Cir.1984), cert. denied, 469 U.S. 1110, 105 S.Ct. 788, 83 L.Ed.2d 782 (1985)). Therefore, if the parties agree, a jury may determine the amount of attorneys' fees, but no party has an absolute right to such a jury determination