NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0011n.06

No. 18-1118

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 10, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KELLY SERVICES, INC., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DALE DE STENO; JONATHAN PERSICO; | ) | COURT FOR THE EASTERN |
| NATHAN PETERS, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE:     BATCHELDER, GIBBONS, and ROGERS, Circuit Judges

**ROGERS, Circuit Judge.** Defendants signed one-year noncompete agreements with their employer, plaintiff Kelly Services, and later left Kelly's employ to join one of Kelly's competitors. Kelly sued, and obtained preliminary injunctive relief that lasted long enough to prevent defendants from working for the competitor for the duration of their noncompete clauses. The only remaining relief sought by Kelly was attorneys' fees, which the district court awarded pursuant to provisions in the noncompete agreements. Defendants appeal the attorneys' fee award, arguing that they did not violate their contractual noncompete obligations in the first place, and that the contractual attorneys' fees in any event could not be awarded without a jury trial under the Seventh Amendment. Neither argument, however, precludes the award of attorneys' fees in this case.

**I**

Defendants were employees of a division of Kelly Services, a staffing and consulting company, in Minneapolis. They each signed employment agreements when they were hired.

Defendant Dale De Steno's employment agreement contained a noncompete provision, under which De Steno agreed that he would "not compete against Kelly . . . for one year after [he] leave[s] Kelly in any market area in which [he] worked." The agreement also contained an attorneys' fees provision:

> If I break this Agreement, Kelly is entitled to recover as damages from me the greater of the amount of the financial loss which Kelly suffers as a result or the amount of the financial gain which I receive. *I will pay Kelly's reasonable attorney's fees and costs involved in enforcing this Agreement.*

(Emphasis added.) The agreement contained a choice of law provision selecting Michigan law.

Defendants Jonathan Persico and Nathan Peters signed similar employment agreements. Like De Steno's, these agreements contained year-long noncompete provisions and attorneys' fees provisions. The attorneys' fees provisions read as follows:

> 6. Remedies/Damages. I agree that the Company's remedies at law for any violations of this Agreement are inadequate and that the Company has the right to seek injunctive relief in addition to any other remedies available to it. Therefore, if I breach this Agreement the Company has the right to, and may seek issuance of a court ordered temporary restraining order, preliminary injunction and permanent injunction, as well as any and all other remedies and damages, including monetary damages. *I further agree to pay any and all legal fees, including without limitation, all attorneys' fees, court costs, and any other related fees and/or costs incurred by the Company in enforcing this Agreement.*

(Emphasis added.) These agreements also contained a Michigan choice of law provision.

In early 2016, defendants accepted offers from a competitor of Kelly's. According to defendants, the offers were "for the same or similar staffing position in the same Minneapolis market area." Kelly sued. Kelly asserted three state law causes of action, including breach of the non-competition provisions and a common law claim for breach of duty of loyalty. In its

complaint, Kelly alleged that it had suffered "damages" as a result of the two breaches of its contracts, including "lost profits and attorneys' fees." Defendants removed the case to the federal court below, and Kelly moved for a preliminary injunction. The district court held a hearing, and on May 2, 2016, entered an order granting Kelly's motion for a preliminary injunction.

The district court found first that Kelly had "made an initial demonstration that irreparable harm may occur" if no injunction was granted. Next, the court found that the harm to Kelly from not issuing an injunction outweighed the harm to defendants. Third, the district court found that Kelly had "shown that it would likely prevail on the merits." The district court wrote:

> The Defendants are almost certainly in violation of their non-compete agreements with Kelly. The Defendants' only argument would be that the non-competes are void. They have not alleged any fraud or other defect in the signing of the agreements, so the Defendants' only legal option is to contend that the non-competes are unreasonable. Reasonable non-compete agreements should be enforced as a matter of policy.

> The agreements in question had a duration of one year, apply to the markets in which the Defendants worked or had responsibility, and forbid the Defendants from working in Kelly's line of business, staffing services . . . . The Defendants have not provided compelling authority explaining why the outcome here should not be identical [to cases upholding the enforceability of identical agreements.]

> The Defendants are working for staffing companies in the same market they serviced for Kelly within weeks, even days, of leaving Kelly. The Court is especially troubled by the Defendants' suggestion that they were working in IT, and not engineering, staffing . . . . Kelly has presented unrebutted evidence that at least one of the Defendants has solicited for multiple positions in the engineering industry. The attempt to argue otherwise would indicate that the Defendants know they are violating their non-compete agreements . . . . In sum, because the agreements are reasonable, and the Defendants have almost certainly violated them, Kelly has demonstrated a likelihood of success on the merits.

(Citations omitted.) Finally, the court found that the public interest was slightly more favorable to Kelly. The court enjoined the defendants "from violating their noncompete agreements until the dispute is resolved and the Court ends the injunction." A subsequent more specific order, entered on May 29, 2016, broadly prohibited defendants from working for any competitors of Kelly in

Minneapolis, and was to last for sixty days, at the end of which Kelly could "request entry of a further injunction." Defendants filed an interlocutory appeal challenging the preliminary injunction.

On July 25, 2016, with the injunction set to expire in three days, Kelly requested a sixty-day extension. On August 30, the court extended the injunction "indefinitely until the Sixth Circuit rules on the defendants' interlocutory appeal." That ruling never came: Defendants voluntarily dismissed the interlocutory appeal a few weeks later, on September 21. Defendants did not move the court to withdraw the injunction, and the court did not address the matter on its own. February 1, 2017 marked the one-year anniversary of defendants' exit from Kelly. Were it not for the indefinitely running preliminary injunction, the defendants would have been free to work for any competitor of Kelly under the terms of their agreements after that date. But litigation proceeded, and neither defendants nor Kelly sought to lift the injunction. Nor did Kelly or the defendants move the court to dismiss the proceeding as moot.

On June 2, 2017, the court entered a "Mediation Order," retroactively lifting the preliminary injunction as of May 29, 2017, one year from its entry. After a failed attempt at mediation, the court amended the scheduling order in the case and set the dispositive motions deadline for July 29. Both Kelly and the defendants moved for summary judgment.

In defendants' motion papers, they contended primarily that the noncompete agreements were not enforceable in the first place, and that the district court's grant of preliminary injunctive relief did not amount to a determination of the merits of Kelly's claims. They also argued that under the Seventh Amendment they were entitled to a jury determination of any award of contractual attorneys' fees. Kelly's motion stated that, by the time it filed for summary judgment, Kelly had been "granted all of the injunctive relief it sought in its Complaint against defendants

and [the] only issue remaining is the amount of attorneys' fees and costs owed to Kelly by defendants." Kelly's response to defendants' motion for summary judgment further contended that Kelly had "prevailed" by virtue of having obtained all the injunctive relief it had sought, but that:

> Even if Kelly had not prevailed on it[s] claims against Defendants, it would still be entitled to its reasonable attorneys' fees and costs. Defendant De Steno's employment agreement expressly states that he "will pay Kelly's reasonable attorney's fees and costs involved in enforcing this Agreement." Likewise, Defendants Persico's and Peters' employment agreements expressly state they "agree to pay any and all legal fees, including without limitation, all attorneys' fees, court costs, and any other related fees and/or costs incurred by the Company in enforcing this Agreement.

(Citations omitted.) Defendants did not appear to contest the enforceability of the attorneys' fees provisions in their employment agreements, but contended only that the "reasonableness" of the fee should be determined by a jury.

In an opinion and order, the district court, noting that Kelly did not seek further enforcement of the non-compete agreements, accepted Kelly's reasoning and rejected that of the defendants. *See Kelly Servs., Inc. v. De Steno*, Case No. 2:16-cv-10698, 2017 WL 4786105 (E.D. Mich. Oct. 24, 2017). The court determined that Kelly was entitled to fees "under a plain reading of the contracts," relying on the contractual language quoted above providing for fees "involved in enforcing" or "incurred . . . in enforcing" the contracts. *Id.* at \*2. The court rejected each of the defendants' primary arguments because: (1) the operative provisions before the court at that point were the covenants to pay attorneys' fees, not the noncompete clauses, and (2) "a ruling on the merits is not required to trigger the attorney's fees provisions." With respect to the latter holding, the district court reasoned:

> The attorney's fees section is distinct from the noncompete clause, and there is no language specifically linking the two. Moreover, the parties did not include language requiring Plaintiff to prevail before it was entitled to the fees.

> Accordingly, a plain reading of the contracts suggests that the parties intended for Defendants to pay attorney's fees if Plaintiff merely sought to enforce the contracts. And enforcement is precisely what the lawsuit involves: Plaintiff, albeit not on the merits, persuaded the Court to enter an order enjoining Defendants from competing for the duration of the noncompete clauses.

*Id.* at *2. The court accordingly determined that Kelly was contractually entitled to reasonable attorneys' fees, and ordered additional briefing on defendants' jury-trial issue. *Id.*

After additional briefing, the court decided that a jury was not required to decide the amount of damages. The court reasoned that submitting the issue of the amount of fees to a jury would mean that the "trial would then become a trial about the cost of the trial itself, ultimately requiring the jury to calculate the cost of each passing minute." After Kelly and the defendants submitted briefing on the reasonable amount of fees to be awarded, the district court determined that $72,182.90 was a reasonable fee award, ordered the defendants to pay it, and closed the case. Defendants appeal.

**II**

Apart from the jury-trial issue, defendants on appeal make essentially the same arguments that they made below: that the noncompete agreements were not enforceable under Michigan law; and that the district court, by making preliminary but not final rulings, did not properly or finally rule on the merits of those issues. In doing so, defendants do not squarely address the district court's reasoning that these arguments are beside the point. The district court ruled in effect that attorneys' fees were owed under the contract even if the district court did not determine that the noncompete agreements were enforceable. On the procedural facts of this case, the district court was correct.

**A**

Given what the defendants agreed to in their employment agreements, the district court was correct to conclude that defendants owe Kelly attorneys' fees. De Steno agreed that he would "pay Kelly's reasonable attorney's fees and costs involved in enforcing this Agreement." Persico and Peters agreed "to pay any and all legal fees, including . . . all attorneys' fees . . . incurred by the Company in enforcing this Agreement." Kelly brought an action to enforce the employment agreements, the district court granted Kelly's request for a preliminary injunction, and the defendants were prohibited from working for an alleged competitor for one year, the full scope of injunctive relief available under the employment agreements. Kelly's attorneys' fees in this case were, under a plain reading of the contracts, "involved" or "incurred" "in enforcing" these agreements, and therefore, under a plain reading of the contracts, Kelly is entitled to have the defendants pay those fees. These contracts are governed by Michigan law and Michigan courts "will enforce [attorneys' fees' provisions] like any other term [in a contract] unless contrary to public policy." *Pransky v. Falcon Grp., Inc.*, 874 N.W.2d 367, 383 (Mich. Ct. App. 2015). As with any other term in a contract, courts should look first to the plain language of the contract, and if the language is unambiguous it will be enforced "as written . . . . [A]n unambiguous contractual provision is reflective of the parties' intent as a matter of law." *Quality Prods. and Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003).

The contracts by their terms do not require a final determination of liability in favor of Kelly as a condition for the award of fees. Unlike numerous similar agreements, these contracts do not employ the words "prevailing party," nor by their literal language do they require a final determination of liability. In fact, as the district court correctly noted, defendants argued below

that these provisions were *not* prevailing party provisions. *De Steno*, 2017 WL 4786105, at *2 n.2.

In reasoning that a final determination of contract breach was not required, the district court may have stated too freely that the contract required former employees to pay attorneys' fees "if [Kelly] merely sought to enforce the contracts." *De Steno*, 2017 WL 4786105, at *2. One can imagine cases where efforts to "seek enforcement" could for instance be unreasonable, made with little or no basis, or made for purposes of oppression or harassment, or could be simply unsuccessful. A court might read the words "reasonable . . . fees . . . involved in enforcing" and "fees . . . incurred . . . in enforcing this Agreement" not to extend to such situations. We do not address the possibility of such a limited interpretation, however, because the record is clear that none of these situations is present in this case. The district court entered a preliminary injunction that resulted in substantial relief, based on a determination that Kelly had shown a strong likelihood of success on the merits. Indeed, defendants withdrew their appeal from the grant of that relief. None of the imagined oppressive or unreasonable situations has occurred here. The contracts accordingly clearly provided for recovery of attorneys' fees.

**B**

The remaining issue is whether the district court erred in determining on its own the amount of fees owed, instead of giving the question to a jury. The district court's ruling refusing to empanel a jury to hear attorneys' fees issues did not violate the Seventh Amendment, which provides that

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

Defendants argue primarily that they are entitled to a jury determination of the amount of attorneys' fees. This argument lacks merit for the persuasive reasons given by the Second Circuit in *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306 (2d Cir. 1993). Under the Seventh Amendment, parties have a right to a jury only for a determination of "legal," as opposed to "equitable," issues, *Curtis v. Loether*, 415 U.S. 189, 193 (1974), and:

> The Supreme Court has held that in determining whether an issue is "legal" or "equitable" under the Seventh Amendment, a court should consider, among other things, "the practical abilities and limitations of juries." *Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). To compute a reasonable amount of attorneys' fees in a particular case requires more than simply a report of the number of hours spent and the hourly rate. The calculation depends on an assessment of whether those statistics are reasonable, based on, among other things, the time and labor reasonably required by the case, the skill demanded by the novelty or complexity of the issues, the burdensomeness of the fees, the incentive effects on future cases, and the fairness to the parties. Such collateral issues do not present the kind of common-law questions for which the Seventh Amendment preserves a jury trial right. In fact, in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240 (1975), the Supreme Court refused to extend the American Rule that parties pay their own fees absent statutory authorization precisely because of the equitable considerations involved in computing a reasonable amount of attorneys' fees.

> Accordingly, although plaintiff had the right to a jury decision on whether defendants should recover attorneys' fees, plaintiff did not have the right to a jury decision on a reasonable amount of attorneys' fees. Unlike the client in *Simler v. Conner*, [372 U.S. 221 (1963),] no party here claimed that the contract directed the amount of attorneys' fees to be awarded by specifying a percentage of an ascertainable sum. Therefore, the district court, in its equitable role, should have determined a reasonable fee.

*McGuire*, 1 F.3d at 1315. The Second Circuit concluded that "there is no absolute right to have a jury determine the amount" of fees, and supported the conclusion with further considerations of fairness and efficiency. *Id.* at 1315-16.

In the instant case it would similarly be highly impractical for a jury to determine the amount of attorneys' fees. As the district court noted below, if these questions were left to juries, "[t]he trial would then become a trial about the cost of the trial itself, ultimately requiring the jury

to calculate the cost of each passing minute." Put differently, it "would be impractical to require the parties to submit evidence on attorney fees before the end of the trial and resultant necessary legal services." *Redshaw Credit Corp. v. Diamond*, 686 F. Supp. 674, 676 (E.D. Tenn. 1988). Further, the jury would have to "look behind the curtain of the case," and review, for example, pre-trial motions in order to calculate the reasonable amount of time spent litigating the case. *McGuire*, 1 F.3d at 1317 (Jacobs, J., concurring).

Defendants rely on cases where plaintiffs brought freestanding breach of contract claims seeking to recover attorneys' fees and in which courts determined that the defendants had a right to a jury determination of the amount of fees awarded. *See J.R. Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1116 (10th Cir. 2009); *Timken Alcor Aerospace Techs., Inc. v. Alcor Engine Co.*, No 1:06-CV-2539, 2010 WL 2650026 (N.D. Ohio July 2, 2010). In such cases, however, having a jury determine the amount of fees would not present the same problems as it would in this case. In *J.R. Simplot* and *Timken Alcor*, the legal action for which the party sought attorneys' fees had already concluded, and therefore the juries would not have had practical difficulties determining the legal cost of the proceeding. Because there would be no practical limitation on the jury's determination of damages in such a case, that determination may present "legal" issues under a Seventh Amendment analysis. Indeed, both the *Simplot* and *Timken* courts specifically *distinguished* the *McGuire* holding on the ground that the court in *McGuire* (like the district court below) did not "decide the availability of a jury trial for fees where . . . a claimant seeks contractual indemnification for fees incurred in a separate litigation against a third party." *Simplot*, 563 F.3d at 1117; *accord Timken Alcor*, 2010 WL 2650026, at *2.

When determining whether an issue is "legal" or "equitable" under the Seventh Amendment, courts also consider "the pre-merger custom with reference to such questions," *i.e.*,

whether such questions were brought in law or in equity before the Federal Rules did away with the distinction. *Ross*, 396 U.S. at 538 n.10. The impracticability concern is dispositive in this case, but "pre-merger custom" also provides some support for considering the calculation and award of attorneys' fees in an underlying action as a matter for the court, and not the jury. *See Schmidt v. Zazzara*, 544 F.2d 412, 414 (9th Cir. 1976); *A.G. Becker-Kipnis & Co. v. Letterman Commodities, Inc.*, 553 F. Supp. 118, 122 (N.D. Ill. 1982).

The Seventh Amendment accordingly does not require a jury determination of the amount of attorneys' fees in this case. Although the defendants' Seventh Amendment argument primarily addresses the determination of the amount of fees, their brief at one point appears to argue that the underlying issue of whether Kelly has a contractual right to fees should have gone to a jury. Appellants' Br. 26-27. This aspect of their argument is not disposed of by the reasoning in *McGuire*, which assumes that before the court decides the amount of attorneys' fees, "the jury is to decide at trial whether a party may recover such fees." 1 F.3d at 1313. Here, however, no jury was required because summary judgment was proper on that issue.

Regardless of whether an issue is "legal" or "equitable" for Seventh Amendment purposes, a judge may grant summary judgment when there is no genuine issue of material fact. "[S]ummary judgment does not violate the Seventh Amendment." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 373 n.3 (6th Cir. 2009) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979)). As discussed above, summary judgment was proper with respect to whether Kelly was entitled to fees in this case, and therefore it was unnecessary to put the question of entitlement to a jury.

Apart from the Seventh Amendment challenge, defendants do not contest the reasonableness of the awarded amount, and we do not address that issue.

## III

The district court's judgment awarding fees is affirmed.

**JULIA SMITH GIBBONS, Circuit Judge, concurring.** I join the portion of Judge Rogers' opinion relating to defendant's argument that they were entitled to a jury trial. My reasoning as to the other issues in the case differs somewhat from his.

Kelly Services' brief does not accurately reflect the procedural history of this case. The district court never reached the ultimate merits questions of whether Kelly was entitled to enforce its contracts and whether defendants had breached those contracts. A preliminary injunction is not a ruling on the ultimate merits of the dispute.

Instead, what happened here is that, after Kelly Services had obtained all the relief it needed via preliminary injunction, the district court decided that a decision on the ultimate merits was unnecessary. It reasoned, in conclusory fashion, that the contract language did not require breach of the agreement to recover attorneys' fees. Defendants have made no effort to counter this interpretation, either in the district court or on appeal.

The district court's interpretation may be the best interpretation of the language, but it is not the only possible interpretation. One might argue that the sentence requires actual enforcement of the contract—a circumstance that did not occur here because of the absence of a merits determination. Or one might argue that the reference to breach in the prior sentence is intended to apply to all remedies, in deciding attorneys' fees. But defendants made neither of these arguments.

In the district court, defendants argued that they had not breached their employment agreements and that the agreements were not enforceable. They also sought a jury trial to determine the amount of attorneys' fees. They did not seem to realize that plaintiff's argument was that plaintiff was entitled to attorneys' fees simply because it had sought judicial help in

enforcing the contracts. On appeal, defendants repeat those same arguments, and never address the question of the proper construction of the attorneys' fee provision.[1]

Therefore, defendants waived these arguments. When a party appeals the district court's judgment and raises arguments on appeal that were not raised before the district courts, we generally consider those arguments waived. *Singleton v. Wulff*, 428 U.S. 106, 120 ("It is the general rule, of course, that a federal appellate court does not consider an issue passed upon below."). Only a narrow exception is available under the *Singleton* rule—we will consider untimely arguments in "exceptional cases" or "when the rule would produce a plain miscarriage of justice." *Pinney Dock and Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1998) (citations omitted). This is not an exceptional case. Application of the district court's ruling does not create a plain miscarriage of justice. Defendants therefore waived these arguments.

---

[1] Although defendants briefly mentioned "the contract language at issue here," they did so only within their argument for a Seventh Amendment right to a jury trial, rather than in an argument about the proper construction of the contract. (CA6 R. 22, Defendants-Appellants Brief, Page ID 33.)