**Joann MEADOWS and Patricia Smouse, Plaintiffs,**

v.

**STATE UNIVERSITY OF NEW YORK AT OSWEGO, Stephen Weber, Jane Milley, Bruce Lester, Sandra Moore, Deborah Stanley, and Marta Santiago, individually and in their official capacities, Defendants.**

Civ. No. 92–CV–1492.

United States District Court, N.D. New York.

Jan. 24, 1995.

---

Seidenberg, Strunk & Goldenberg, Syracuse, NY, for plaintiffs (Faith Seidenberg, of counsel).

Dennis C. Vacco, Atty. Gen. for the State of N.Y., Albany, NY, for defendants (Steven H. Schwartz, of counsel).

## DECISION AND ORDER

SCULLIN, District Judge:

### I. INTRODUCTION

Plaintiffs JoAnn Meadows and Patricia Smouse originally brought this action against the State University of New York at Oswego ("SUNY Oswego") and Dr. Stephen Weber, President; Dr. Jane Milley, Provost; Deborah Stanley, Executive Assistant to the President; Dr. Sandra Moore, Athletic Director; Dr. Bruce Lester, Interim Athletic Department Chairman; and Marta Santiago, Affirmative Action Officer; in their individual and official capacities. The complaint alleged violations of Title IX, 20 U.S.C. § 1681 et seq.; Title VII retaliation, 42 U.S.C. § 2000e–3; Title VII gender discrimination, 42 U.S.C. § 2000e–2; 42 U.S.C. § 1983; 42 U.S.C. § 1985(3); 42 U.S.C. § 1986; the First Amendment to the Constitution of the United States; New York Civil Service Law § 75–b; and New York Executive Law § 290 et seq.

The Title IX claim, the 42 U.S.C. § 1986 claim, and the First Amendment claim were dismissed, with the consent of all parties, as duplicative of the remaining claims. The 42 U.S.C. § 1983 claims against SUNY Oswego and each defendant in his/her official capacity were dismissed as violative of the immunity from suit afforded to states under the Eleventh Amendment. The court, thereafter, with the approval of the parties, bifurcated the trial as to liability and damages and proceeded to trial only on the issue of liability. The trial was held from November 28, 1994 through December 14, 1994.

During the course of the trial, the plaintiffs withdrew their state law claims (NY Civ. Ser.Law § 75–b and NY Exec.Law § 290 et seq.). At the close of plaintiffs' case, the

court dismissed both plaintiffs' 42 U.S.C. § 1985(3) conspiracy claims on the grounds of insufficient evidence. Additionally, the court dismissed plaintiff Meadows' Title VII discrimination claim as to all defendants because she failed to establish any discriminatory basis for the employment actions taken against her.[1] And finally, the court dismissed all of the remaining claims against defendants Lester, Stanley, Santiago and Milley on the basis that the evidence clearly showed that they were not responsible for any of the adverse employment actions at issue.

On December 14, 1994, the remaining claims were submitted to the jury. These claims consisted of:

Plaintiff Meadows—

> 1) 42 U.S.C. § 1983 claim against Dr. Weber and Dr. Moore; and

> 2) Title VII retaliation claim against Dr. Weber, Dr. Moore and SUNY Oswego;

Plaintiff Smouse—

> 1) 42 U.S.C. § 1983 claim against Dr. Weber;

> 2) Title VII retaliation claim against Dr. Weber and SUNY Oswego; and

> 3) Title VII discrimination claim against Dr. Weber and SUNY Oswego.

On December 15, 1994, the jury returned a verdict finding in favor of defendants on all claims except for plaintiff Smouse's Title VII retaliation claim. With respect to Smouse's

Title VII retaliation claim, the jury found that SUNY Oswego, acting through its "agents," had retaliated against her for her complaints of gender discrimination.

▆▆▆▆ Presently before the court are the defendants' Rule 50 motions for judgment as a matter of law which were brought at the close of plaintiffs' case, and which defendants renewed after the jury returned its verdict.[2] In determining whether to grant a judgment as a matter of law pursuant to Rule 50, the court must examine the entire record in the light most favorable to the non-moving party. *Mattivi v. South African Marine Corp., "Huguenot"*, 618 F.2d 163, 167–68 (2d Cir. 1980).

In evaluating the Rule 50 motions, the court has reviewed the evidence as contained in the trial record and considered the arguments set forth by both parties in their post-trial submissions. The court notes at the outset that its review of the evidence was hindered by the failure of either party to develop a clear factual record. Despite the court's constant admonishment to focus on the relevant elements of the causes of action, neither plaintiffs nor defendants were able to establish clear facts in support of their respective positions. The evidence presented was barely sufficient to warrant submitting this case to the jury; however, the court decided to do so with the assistance of special verdict forms.

Notwithstanding the use of the special verdict forms, the jury's answers to the ques-

---

1. Plaintiff Meadows failed to establish a prima facie case of gender discrimination. It was undisputed that her position as Director of Women's Athletics was abolished due to the consolidation of the men's and women's athletic departments. The position of Director of Men's Athletics was similarly abolished, with both positions being ultimately combined and filled by a female, Dr. Sandra Moore.

2. Defendants' Rule 50 motions sought judgment as a matter of law on plaintiff Smouse's Title VII retaliation claim against SUNY Oswego as well as her 42 U.S.C. § 1983 claim against Dr. Weber. The court finds it unnecessary to address defendant Weber's motion in regard to Smouse's 42 U.S.C. § 1983 claim, because it is a request to vacate a specific factual finding of the jury rather than a request for judgment as a matter of law. This is illustrated by the fact that judgment was

*in favor of* defendant Weber on this claim. Since judgment was in favor of Weber, and defendants have cited no authority for granting such relief under these circumstances, the court declines to grant such relief.

While plaintiff Smouse never affirmatively moved for relief under Rule 50, her arguments in opposition to defendants' motions imply that she seeks such relief. Plaintiff argues that there is no "same decision" defense to a retaliation claim under 42 U.S.C. § 1983, thereby entitling her to judgment as a matter of law on that claim. The court finds this argument to be specious as a matter of law. *See, e.g., Frank v. Relin*, 1 F.3d 1317, 1329 (2d Cir.1993) ("[Defendant] may prevail if it can show that it would have made the same decision in the absence of the protected conduct...."). Such briefing is indicative of the problems the court has had to deal with throughout this case.

tions posed there now require the court to again review the evidence pursuant to Rule 50 standards. Although the court believes it may be justified, in light of the paucity of relevant evidence, to grant a judgment as a matter of law for the defendants, it will not do so. Instead, in the interest of justice and because the Court finds the jury's answers to the questions in the special verdict forms to be inconsistent under a Rule 49 analysis, the court will order a partial retrial, pursuant to Rule 59 of the Federal Rules of Civil Procedure, as to plaintiff Smouse's Title VII retaliation claim, against SUNY Oswego and Dr. Weber.

## II. INCONSISTENT FINDINGS UNDER RULE 49

As stated above, at the close of the case the court submitted special verdict forms to the jury pursuant to Rule 49 of the Federal Rules of Civil Procedure. These special verdict forms consisted of "a series of questions of adjudicative fact[s] to be answered by the jury." *Denny v. Ford Motor Co.*, 42 F.3d 106, 111 (2d Cir.1994). Because the court did not require the jury to return a general verdict in addition to these questions, the submission of the special verdict forms is governed by Rule 49(a) of the Federal Rules of Civil Procedure. *Avic Amusements, Inc. v. Angellotti*, 1988 WL 121096, *1 (N.D.N.Y. 1988) (Munson, J.). Rule 49(a) provides, in pertinent part:

> The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made

under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. Fed.R.Civ.Proc. 49(a).

Once the jury has answered all of the questions and completed the special verdict form, the court is required to "appl[y] the law to those answers." *Lavoie v. Pacific Press & Shear Co.*, 975 F.2d 48, 53 (2d Cir.1992). Pursuant to Rules 49(a) and 58 of the Federal Rules of Civil Procedure, the court is bound to enter judgment according to the facts found by the jury, "provided such facts are consistent with one another." *Avic*, 1988 WL 121096 at *2.

In the case at bar, the jury found that Dr. Weber, SUNY Oswego's agent, did not retaliate against plaintiff Smouse while also finding that SUNY Oswego, acting through its agents, had retaliated against her in violation of Title VII. Even though neither party objected to, or even addressed, these potentially inconsistent answers in their post-trial submissions,[3] the Second Circuit has held that a court may review such findings sua sponte. *Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 891 (2d Cir.1988). In situations where the inconsistency is noticed prior to dismissal of the jury, as it was here,[4] the "court has the discretion to resubmit the issues to the jury with a request for clarification." *Id.* Resubmission is not required, however, and this court chooses not to do so.

The Second Circuit has made it clear that after a court decides not to resubmit the seemingly inconsistent answers to the jury, it must engage in a two-step process. First, the court must attempt "to reconcile the jury's answers ... with any rea-

---

**3.** While defendants failed to perceive the existence of the inconsistencies when questioned during oral argument, their Rule 50 motions are based, in part, on these same inconsistent answers. Defendants argue that as a result of the jury finding no causal connection between Smouse's protected activity and Weber's decision not to renew her contract, the jury's contradictory finding as to SUNY Oswego must be vacated and judgment as a matter of law granted. However, "[s]uch a result does not reconcile the inconsistency but simply overrules one inconsis-

tent answer." *Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 891 (2d Cir.1988). If the court were to grant defendants' motion on these grounds, it would be "sanctioning one factual finding at the expense of its inconsistent counterpart." *Lavoie*, 975 F.2d at 56.

**4.** As stated above, prior to trial the court bifurcated this action; therefore, the jury was not dismissed upon the rendering of its verdict as to liability.

sonable theory consistent with the evidence, and ... attempt to harmonize the answers if possible under a fair reading of those answers." *McGuire v. Russell Miller, Inc.,* 1 F.3d 1306, 1311 (2d Cir.1993) (citations omitted). If, after a thorough review of the evidence, the court is unable to harmonize the answers, a new trial must be ordered. *Auwood,* 850 F.2d at 891.

■■■ In attempting to harmonize the potentially inconsistent answers, "the court must search for a reasonable way to read the verdicts as expressing a coherent view of the case...." *McGuire,* 1 F.3d at 1311 (citations omitted). Thus, "[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962). "A new trial should be granted only when the answers are logically incompatible." *Avic,* 1988 WL 121096 at *3 (citations omitted). In determining the logic of the jury's answers, the "court should refer to the entire case and not just the answers themselves." *McGuire,* 1 F.3d at 1311.

## III. PLAINTIFF SMOUSE'S TITLE VII RETALIATION CLAIM

■■■ In order to establish a prima facie case of retaliation under Title VII, a plaintiff must prove by a preponderance of the evidence the following four elements. First, that she was engaged in activity protected under Title VII. Second, that her employer was aware of such activity. Third, that she suffered an adverse employment action. And finally, that there was a causal connection between the protected activity and the adverse employment action. *Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir.1991); *Hollander v. American Cyanamid Co.,* 895 F.2d 80, 85 (2d Cir.1990).

Here, plaintiff Smouse alleges that SUNY Oswego is liable as an "employer" under Title VII, 42 U.S.C. § 2000e–3(a), that is, "a person engaged in an industry affecting commerce ... and any agent of such a person...." 42 U.S.C. § 2000e(b). SUNY

Oswego therefore can be held liable for the unlawful acts of its agents. The focus, however, is not on all the agents of SUNY Oswego, but only on those agents who were responsible for the adverse employment decision at issue—here, the decision not to renew Smouse's contract. *See DeWald v. Amsterdam Hous. Auth.,* 823 F.Supp. 94, 103 (N.D.N.Y.1993) (McCurn, J.).

In this case, a review of the evidence establishes that Dr. Weber was the agent *solely* responsible for the adverse employment decision at issue. Dr. Weber testified that he made the decision not to renew Smouse's contract and he testified as to what factors influenced him in that decision. Similarly, Dr. Milley testified that it was the "president (Dr. Weber) who had the final authority" to renew Smouse's contract, and Dr. Moore explained that with respect to renewing Smouse's contract, "the decision [was] the president's responsibility." Indeed, the parties conceded that Dr. Weber alone made the decision not to renew Ms. Smouse's contract.

## IV. THE INCONSISTENT ANSWERS IN THE CASE AT BAR

■■■ The special verdict forms in this case inquired as to the conduct of defendants Weber and SUNY Oswego with respect to the non-renewal of plaintiff Smouse's contract.[5] In answering these questions, the jury found that plaintiff Smouse had engaged in activity protected under Title VII. They also found, consistent with the evidence detailed above, that defendant Weber had made the decision not to renew Smouse's contract. Despite those two findings, the jury found that there was *no causal connection* between plaintiff Smouse's participation in protected activity and defendant Weber's decision not to renew her contract. That is, the jury found that plaintiff's protected activity was *not* a motivating factor in Dr. Weber's decision not to renew her contract. Thus defendant Weber was absolved of liability for Title VII retaliation.

Having determined that the agent responsible for the adverse employment decision (Dr. Weber) was not motivated by an im-

**5.** The relevant questions and the jury's responses are set out in Appendix A.

proper factor, the jury addressed the principal's (SUNY Oswego's) liability. The jury found that the plaintiff had engaged in protected activity and that SUNY Oswego, acting through its agents, made the decision not to renew her contract. When determining SUNY Oswego's motivations, however, the jury found that there *was a causal connection* between Smouse's participation in protected activity and the non-renewal of her contract. Because SUNY Oswego may only act through its agents, and because Dr. Weber was the only agent responsible for the adverse employment decision, the inconsistency in these answers is readily apparent.

While the court is mindful of its duty to attempt to harmonize these inconsistent answers, there is no reasonable reading of the evidence that would permit it to do so. As previously pointed out, essential evidence was never developed and, therefore, important facts were never established. The record is a scattered patchwork of relevant and irrelevant evidence which begs further elucidation. Nevertheless, one fact that was clearly established was that Dr. Weber was solely responsible for the adverse employment decision. Therefore, SUNY Oswego's liability could only flow from Dr. Weber's actions. Because the jury found that there was no causal connection between Smouse's protected activity and Dr. Weber's decision, it is legally inconsistent to hold SUNY Oswego liable. *See* Restatement (Second) of Agency §§ 219–237 (1958); *Whitaker v. Port Auth. of N.Y. and N.J.,* No. 88–CV–4395, 1993 WL 410169, *4–5, 1993 U.S.Dist. LEXIS 14477, *15–16 (Oct. 14, 1993); *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986). After a thorough review of the record, this court finds "no reasonable way to read the verdicts as expressing a coherent view of the case." *McGuire,* 1 F.3d at 1311. Therefore the court is unable to harmonize the jury's findings.

## V. CONCLUSION

 Once a court is convinced that it cannot harmonize the inconsistent answers, it "must order a new trial." *Auwood,* 850 F.2d at 891. The court, however, finds no need to retry all of the claims presented in this trial. *See, Brooks v. Brattleboro Mem. Hosp.,* 958 F.2d 525, 531 (2d Cir.1992) ("Use of [special] interrogatories 'ordinarily' facilitates the grant of a retrial limited to the issues erroneously decided."). A partial new trial may be ordered when " 'it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.' " *Bohack Corp. v. Iowa Beef Processors, Inc.,* 715 F.2d 703, 709 (2d Cir.1983) (quoting *Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931)). In the present case, it is clear that plaintiff Smouse's Title VII retaliation claim is sufficiently "distinct and separable" from the other claims to warrant a partial retrial. The court, therefore, orders a retrial of plaintiff Smouse's Title VII retaliation claim.

Therefore, it is hereby

ORDERED, that there shall be a NEW TRIAL on the issue of plaintiff Smouse's claim of retaliation under Title VII, 42 U.S.C. § 2000e–3 against defendants SUNY Oswego and Stephen Weber, and it is further

ORDERED, that judgment be entered, pursuant to the jury's findings, in favor of all defendants as to all remaining claims, and it is further

ORDERED, that defendants' motions for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure are DENIED, and it is further

ORDERED, that all other motions/applications are denied as being without legal bases, and it is further

ORDERED, that the jury be dismissed.

**IT IS SO ORDERED.**

## *APPENDIX A*

The relevant special verdict questions and the jury's responses were:

**PLAINTIFF SMOUSE: TITLE VII RETALIATION**

**Defendant Weber**

7. Did plaintiff Smouse make a complaint of gender discrimination?

**14**

YES X NO ____

If your answer is "No," you are finished with this defendant, proceed to question 11.

If your answer is "Yes," answer the following question.

8. Did defendant Weber make the decision to not renew plaintiff Smouse's contract?

YES X NO ____

If your answer is "No," you are finished with this defendant, proceed to question 11.

If your answer is "Yes," answer the following question.

9. Was there a causal connection between the plaintiff's complaint and defendant Weber's decision not to renew plaintiff's contract, that is, was the complaint a motivating factor in her non-renewal?

YES ____ NO X

If your answer is "No," you are finished with this defendant, proceed to question 11.

If your answer is "Yes," answer the following question.

10A. Has the evidence established that there were non-retaliatory reasons for Dr. Weber's decision not to renew plaintiff Smouse's contract?

YES ____ NO ____

If your answer is "No," proceed to question 11.

If your answer is "Yes," answer the following question.

10B. If there were other non-retaliatory reasons, would those reasons have been sufficient grounds for the non-renewal of plaintiff Smouse's contract?

YES ____ NO ____

Proceed to question 11 once you have answered this question.

**Defendant SUNY Oswego**

11. Did plaintiff Smouse make a complaint of gender discrimination?

YES X NO ____

If your answer is "No," you are finished with this defendant, proceed to question 15.

If your answer is "Yes," answer the following question.

12. Did defendant SUNY Oswego make the decision, through its agents, to not renew plaintiff Smouse's contract?

YES X NO ____

If your answer is "No," you are finished with this defendant, proceed to question 15.

If your answer is "Yes," answer the following question.

13. Was there a causal connection between the plaintiff's complaint and defendant SUNY Oswego's decision, through its agents, not to renew plaintiff's contract, that is, was the complaint a motivating factor in her non-renewal?

YES X NO ____

If your answer is "No," you are finished with 'this defendant, proceed to question 15.

If your answer is "Yes," answer the following question.

14A. Has the evidence established that there were non-retaliatory reasons for SUNY Oswego's non-renewal, through its agents, of plaintiff Smouse's contract?

YES X NO ____

If your answer is "No," proceed to question 15.

If your answer is "Yes," answer the following question.

14B. If there were other non-retaliatory reasons, would those reasons have been suffi-

cient grounds for the non-renewal of plaintiff Smouse's contract?

YES _____ NO X

Proceed to question 15 once you have answered this question.