**Eddie SIMMS, Edward L. Smith, Plaintiffs–Appellants,**

v.

**VILLAGE OF ALBION, NEW YORK; Joseph Sacco, Police Officer; Donald Hinman, Acting Police Chief, Defendants–Appellees.**

No. 396, Docket 95–9191.

United States Court of Appeals, Second Circuit.

Argued Nov. 21, 1996.

Decided June 16, 1997.

Ronald Paul Hart, Ithaca, NY, for Appellant Eddie Simms.

Wilmer A. Rodriguez–Nunci, New York City, for Appellant Edward L. Smith.

Harry F. Mooney, Hurwitz & Fine, P.C. Buffalo, NY, for Appellee Village of Albion.

Robert M. Brennan, Christiano & Brennan, Rochester, NY, for Appellee Joseph Sacco.

Thomas A. DeSimon, Harris Beach & Wilcox, Rochester, NY, for Appellee Donald Hinman.

Before: CARDAMONE and CALABRESI, Circuit Judges, and POOLER *, District Judge.

POOLER, District Judge.

Plaintiffs-Appellants Eddie Simms and Edward L. Smith appeal from final judgments entered in the United States District Court for the Western District of New York, Larimer, J., following a jury trial of consolidated actions. Judge Larimer dismissed (1) plaintiffs' claims under 42 U.S.C. §§ 1981, 1983, 1985(3), and 1988, which included claims for unlawful search and seizure, racial discrimination, false arrest and imprisonment, malicious prosecution, abuse of process, and excessive use of force, and (2) Simms' pendent state-law claims. The district court entered judgments in favor of defendants Donald Hinman, the Village of Albion ("Village"), and Joseph Sacco at different stages in the proceedings.[1] On appeal, appellants contend that the district court improperly entered judgment as a matter of law for defendants Hinman and the Village at the close of plaintiffs' case and judgment on a special verdict for defendant Sacco after the jury answered only five of six special verdict questions. Appellants argue that the court should have granted them partial summary judgment or retrial on their Fourth Amendment claims. Appellants contend finally that the trial court erred in its special verdict questions and instructions to the jury with respect to the Fourth Amendment claim. For the reasons below, we affirm the judgments of the district court.

## I. BACKGROUND

### A. The Events

The present action arose out of the arrests of Simms and Smith on September 12, 1992,

---

* Honorable Rosemary S. Pooler, United States District Court Judge for the Northern District of New York, sitting by designation.

1. The court's November 3, 1995, judgment dismissed the complaint against Joseph Sacco based on the jury's answers to interrogatories in the special verdict. The November 8, 1995, judgment, which was based on Judge Larimer's October 24, 1995, ruling granting a motion made pursuant to Fed.R.Crim.P. 50, dismissed the complaint against Donald Hinman and the Village of Albion. The Amended Notice of Appeal twice refers to the November 3rd judgment and does not refer to the November 8th judgment. We assume the second reference to be a typographical error meant to refer to the November 8th judgment.

in Albion, New York. Also arrested were Cordell Cooper and Timothy King, who are not parties to this appeal. The arrests were the culmination of a Village of Albion police investigation into suspected drug activity taking place at the Dollinger Motel ("Motel") during the months of August and September 1992. The investigation began on August 26, 1992. On that day, an unrelated occurrence set in motion a series of events that ultimately led to this appeal. At approximately 2:49 p.m., a bank robbery took place at a Fleet Bank located on Main Street in the Village of Albion. A police radio broadcast described the suspect as a black male in his mid to late thirties, five feet seven inches to five feet eight inches tall, with a thin build, weighing approximately 150 pounds, and with scruffy hair on his chin and cheeks.

The Albion Police Department dispatched Investigator Joseph Sacco to assist in the investigation of the bank robbery. While patrolling in his police car, Sacco spotted plaintiff-appellant Eddie Simms talking on a public telephone near the bank and approached him. Simms is a black male, who then was five feet eight inches tall and weighed about 165 pounds. Sacco noticed a bulge in Simms' pocket, patted him down, and pulled out a key and key ring to room 8 of the Motel, which was less than 200 yards from the telephone booth. Sacco asked Simms to accompany him to the Motel. Although Simms now contends that he did not do so voluntarily, it is undisputed that Simms and Sacco traveled from the telephone booth to room 8 of the Motel in the patrol car. Simms remained in the car while Sacco went to the door of room 8. Cordell Cooper, the occupant of the room, opened the door and allowed Sacco to enter the room. Once inside, Sacco saw a bag containing what appeared to be marijuana lying in plain view. Cooper denied the bag was his, and Sacco seized it.

Police subsequently displayed Cooper and Simms in a show-up identification to bank employees, who failed to identify them as the robbers. Both men were released and immediately left the Village of Albion to return to their homes in Rochester.

On August 28, 1992, Sacco tested the substance he had seized in room 8 and found it to be marijuana. Sacco testified that he did not perform the test sooner because he was involved in the bank robbery investigation. Sacco prepared an information accusing Simms and Cooper of unlawful possession of marijuana in violation of N.Y. Penal L. § 221.05. Sacco also prepared arrest warrants for Simms and Cooper. Albion Village Justice William Larimer (no relation to the district court judge in this case) signed the arrest warrants on August 28, 1992. Sacco placed the warrants in a police file because he had information that Simms and Cooper had left town.

Between August 28, 1992, and September 10, 1992, Sacco learned from two confidential informants that Simms, Cooper, and others were selling drugs from room 20 of the Motel. Sacco arranged for a controlled drug buy at room 20 during the evening of September 10, 1992. Immediately after the controlled buy, Sacco drafted and signed a proposed search warrant and supporting affidavit and submitted them to Albion Village Justice Dennis Stirk. In his affidavit, Sacco stated that he had used an informant to conduct a "controlled buy" of cocaine from Cordell D. Cooper, AKA "Cory Stanly." Cory Stanly was the name listed on the motel register as the renter of the Motel room 20. Justice Stirk signed the search warrants, authorizing police to conduct the search of motel room 20 at any time of the day or night and to enter the premises to be searched without giving notice of their authority or purpose.

Sacco assembled a group of Albion Village Police officers, including defendant Donald E. Hinman, then acting Chief of Police of the Village of Albion, and Orleans County Sheriff Deputies to attempt to execute the search warrant. Because Sacco expected both Simms and Cooper to be present in room 20, he took the arrest warrants for Simms and Cooper as well as the search warrant to room 20. The officers obtained a key to room 20 from Joyce Dollinger, the owner of the Motel, and used the key to enter the room. The officers found no one in the room when they entered. A factual dispute exists about what

the officers did while they were in the room. Sacco maintains that he simply looked around to see if anyone was there and then left without searching for drugs. Appellants contend that the officers spent several minutes looking through dresser drawers, wastebaskets, and so on, but found nothing. One witness, former Orleans County Deputy Sheriff Carl Phillips, testified at trial that Sacco searched under the beds and in desk drawers and garbage cans.

After withdrawing from the room, Sacco and the others left the area. Sacco conducted a surveillance of room 20 from approximately 4:00 p.m. to 11:00 p.m. on September 11, 1992, but saw no one enter or leave the room. Sacco learned from Joyce Dollinger that the occupants of the room had paid for the room until September 12 at 11:00 a.m.

Shortly after 10:00 a.m. on the morning of September 12, 1992, Sacco returned to the room along with several other officers. Sacco brought the arrest warrants for Cooper and Simms and the same search warrant that he had obtained on September 10, 1992. The officers again obtained a key to room 20 from Joyce Dollinger and used the key to enter the room. However, on this occasion the officers broke through a chain lock that was attached to the inside of the door. Both Simms and Cooper were inside the room, along with Smith and another man. Each of the four officers who entered the room secured one of the four occupants. Sacco secured Simms, who was lying on the bed farthest from the door.

When Sacco ordered Simms from the bed, Sacco observed a Coca–Cola can under Simms' left thigh and money in Simms' shorts. Sacco took the can and noted that the can "appeared strange." Supplemental Appendix on Appeal at R–105 ¶ 17. He discovered that it was not an actual Coca–Cola can, but had a twist-off top. When he removed the top, Sacco found plastic baggies containing cocaine inside the can. Sacco observed other drug paraphernalia in plain view.

Police placed all four occupants of the room under arrest and removed them from the room. After the suspects were removed, one of the officers noticed some white flakes on the floor of the room that appeared to have fallen from the ceiling tiles. The officers obtained a ladder and searched the space of several inches between the drop ceiling and the actual ceiling. When they looked into the ceiling space, the officers found another false Coca–Cola can with more cocaine inside, as well as a large amount of cash.

A New York State grand jury subsequently indicted Simms and Smith for Criminal Possession of a Controlled Substance in the Third Degree, N.Y. Penal L. § 220.16. Smith pleaded guilty pursuant to a plea agreement, and Simms went to trial. During the criminal proceedings against Simms, Sacco and the other involved officers notified Assistant District Attorney Shirley Gorman of the police officers' entry into room 20 on September 10 pursuant to the warrants. Gorman later stated in an affidavit that she believed that the September 10 entry created a "fatal defect in the execution" of the search warrant on September 12, 1992. Appendix on Appeal at 93 ¶ 7. Gorman moved to dismiss the indictment against Simms, to allow Smith to withdraw his guilty plea, and to vacate Smith's conviction. In Cooper's criminal case, Gorman consented to an oral motion to vacate Cooper's conviction pursuant to N.Y.Crim. Proc. L. § 440 based on the apparent violation of the prosecution's disclosure obligations under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Gorman added that she believed if a motion were made to suppress the evidence seized on September 12, 1992, the motion would be granted.

### B. The District Court Proceedings

Eddie Simms, Edward Smith, and Cordell Cooper filed civil rights actions in district court against the Village, Hinman, and Sacco, as well as Orleans County Sheriff David M. Green, Orleans County, and several other officers who were present at the Motel during either the September 10 or September 12 entries into room 20. In addition to his federal claims, Simms asserted state law claims for assault and battery, false arrest, false imprisonment, malicious prosecution, negligent hiring and retaining of personnel,

negligence in training and supervision, negligence in performance of duties, negligent infliction of emotional distress, intentional infliction of emotional distress, and abuse of process.

Plaintiffs' complaints centered on their allegation that the police violated their Fourth Amendment rights by entering room 20 on September 12, 1992, searching the room, and arresting them. First, plaintiffs claimed that the police entered without a valid search or arrest warrant. Plaintiffs contended that the search warrant was invalid on September 12 because it already had been executed on September 10. Plaintiffs claimed that the arrest warrants were invalid because (1) Sacco materially misled the magistrate by lying about finding the marijuana in room 8 and omitting information that indicated Sacco initially stopped Simms only because he was black and (2) New York law prohibited issuing an arrest warrant for possession of marijuana under these circumstances. Second, plaintiffs claimed that the police lacked probable cause to arrest them once defendants had entered the room. Plaintiff Smith acknowledged that the police found drugs in

room 20 but claimed that the drugs were not in plain view and that he was unaware of their presence. Plaintiff Simms claimed that he had no drugs in room 20 the morning he was arrested, so the police must have planted any drugs they seized.

Following discovery, all defendants moved for summary judgment. Simms and Smith made a cross-motion for partial summary judgment on the issue of liability. On September 29, 1995, Judge Larimer dismissed plaintiffs' claims against all defendants except the Village, Hinman, and Sacco. The district court also denied plaintiffs' cross-motion for summary judgment on the issue of liability. The case proceeded to trial.

Trial commenced on October 16, 1995. At the close of plaintiffs' case on October 24, 1995, the three remaining defendants moved for judgment as a matter of law. Judge Larimer granted the motions of defendants Hinman and the Village but denied Sacco's motion. Following presentation of Sacco's case, the court asked the jury to answer six questions on a special verdict form pursuant to Fed.R.Civ.P. 49.[2]

**2.** The special verdict questions were as follows:

**QUESTION 1:**
Did defendant Sacco knowingly make false statements in the application for warrants for the arrest of plaintiffs Cooper and Simms for possession of marijuana on August 26, 1992?
YES _____ NO _____
If you answered "YES," then answer the following question. If you answered "NO," go on to Question 2.
Was plaintiffs' race a motivating factor in defendant Sacco's actions in this regard?
YES _____ NO _____

**QUESTION 2:**
Did defendant Sacco search Room 20 for anything other than Cooper and Simms on September 10, 1992?
YES _____ NO _____

**QUESTION 3:**
Did defendant Sacco cause the cocaine that was found in Room 20 on September 12, 1992, to be put there?
YES _____ NO _____
If you answered "YES," then answer the following question. If you answered "NO," go on to Question 4.
Was plaintiffs' race a motivating factor in defendant Sacco's actions in this regard?
YES _____ NO _____

**QUESTION 4:**
Did defendant Sacco have probable cause to believe that plaintiff Cooper possessed cocaine on September 12?
YES _____ NO _____
If you answered "NO," then answer the following question. If you answered "YES," go on to Question 5.
Was plaintiff Cooper's race a motivating factor in defendant Sacco's decision to arrest plaintiff Cooper without probable cause?
YES _____ NO _____

**QUESTION 5:**
Did defendant Sacco have probable cause to believe that plaintiff Simms possessed cocaine on September 12?
YES _____ NO _____
If you answer "NO," then answer the following question. If you answered "YES," go on to Question 6.
Was plaintiff Simms' race a motivating factor in defendant Sacco's decision to arrest plaintiff Simms without probable cause?
YES _____ NO _____

**QUESTION 6:**
Did defendant Sacco have probable cause to believe that plaintiff Smith possessed cocaine on September 12?
YES _____ NO _____
If you answered "NO," then answer the following question.

On October 30, 1995, the jury returned a special verdict in which it answered "no" to questions 1 and 3 and "yes" to Questions 4, 5, and 6. The jury was unable to reach a unanimous decision on Question 2. After dismissing the jury, the court received written submissions and heard argument concerning the effect of the interrogatory answers on plaintiffs' claims against Sacco and subsequently entered a verdict of "no cause of action" on all claims by all plaintiffs and dismissed the claims against defendant Sacco. This appeal followed.

## II. DISCUSSION

On appeal, Simms and Smith pursue their Section 1983 Fourth Amendment and related state law claims against Sacco, Hinman, and the Village. Appellants claim that the district court erred in its (1) dismissal of plaintiffs' claims and entry of judgment for defendant Sacco following receipt of the jury's special verdict; (2) "reliance" on arrest warrants that were obtained without disclosing all relevant information to the issuing magistrate and in violation of N.Y.Crim. Proc. Law § 150.75; (3) submission of Question 2 to the jury as to whether the search warrant was executed; (4) submission of Questions 4, 5, and 6 to the jury regarding whether probable cause to arrest existed; (5) instruction to the jury as to the legal implications of its factual determinations; (6) grant of judgment as a matter of law in favor of defendants Hinman and the Village; and (7) denial of appellants' pretrial cross-motion for summary judgment on the issue of liability.

### A. Judgment on the Special Verdict

Plaintiffs claim that the trial court erred by entering judgment for Sacco on the special verdict because the jury was unable to answer Question 2. By asking whether Sacco searched for anything other than Cooper and Simms, the unanswered interrogatory asked the jury to determine whether Sacco executed the search warrant on September 10, 1992, two days prior to appellants' arrest and the acknowledged search. The significance

of that question related to appellants' allegation that Sacco unlawfully re-executed the search warrant on September 12, 1992. Plaintiffs claim that they are entitled to a new trial on this unanswered question.

Fed.R.Civ.P. 49(a) provides that a court "may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact." The purpose of a special verdict is "to identify the basis for the jury's verdict, and thus to avoid confusion, appellate uncertainty, and the need for additional proceedings." *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1310 (2d Cir.1993).

Courts have recognized that "partially completed special verdict forms are sufficient, provided that the answered questions support the verdict and the unanswered questions, if answered in favor of the nonprevailing party, would not render the judgment erroneous." *Bristol Steel & Iron Works v. Bethlehem Steel Corp.*, 41 F.3d 182, 190 (4th Cir.1994). If a jury fails to answer all the questions submitted in a special verdict, the verdict "may ... be accepted for those issues that are resolved. It is 'a special verdict' to the extent findings are made (assuming such findings are not contradictory)." *Quaker City Gear Works v. Skil Corp.*, 747 F.2d 1446, 1453 (Fed.Cir.1984); *see also* 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2510 at 214 (2d ed.1994). It follows from these principles that the district court correctly entered judgment despite the jury's inability to reach an answer as to Question 2 if the remaining answers rendered the unanswered question irrelevant.

The district court held that the jury's responses to the five interrogatories made its failure to answer Question 2 inconsequential based upon two prior holdings. First, in his ruling on defendants' motion for summary judgment, the judge held that the existence of valid arrest warrants justified defendants' subsequent entry into room 20 on September 12 despite the officers' subjective intent to

Was plaintiff Smith's race a motivating factor in defendant Sacco's decision to arrest plaintiff Smith without probable cause?

YES _____ NO _____

rely on a presumptively invalid search warrant. Second, the judge held that it would have been reasonable for the officers to rely on the validity of the arrest warrants because a magistrate issued them. In light of the jury's finding that Sacco did not make false statements to obtain the arrest warrants from the magistrate, the district court concluded that it was reasonable for Sacco also to rely on their validity. Because the court's legal rulings and the jury's factual findings established that defendants properly relied on the arrest warrants on September 12, the court concluded that the validity of the search warrant was irrelevant. We agree.

### B. Qualified Immunity

#### 1. The Arrest Warrants

Appellants make several related arguments involving the validity of the arrest warrants and the arresting officers' reliance on those warrants. Appellants contend that the court erred in holding that the arrest warrants authorized the officers' entry into room 20 because those warrants were invalid under N.Y.Crim. Proc. Law § 150.75.

The district court did not decide whether the arrest warrants were valid. Instead, it found that the officers reasonably relied on the arrest warrants because Section 150.75 was unclear at the time of the arrest. The court correctly concluded that qualified immunity shielded the officers from liability for actions they took within the authority ostensibly conferred by the arrest warrants.

■ As government officials performing discretionary functions, police officers are entitled to qualified immunity, which shields them from civil damages liability insofar as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), or insofar as "it [is] objectively reasonable for them to believe that their acts d[o] not violate those rights," *Velardi v. Walsh,* 40 F.3d 569, 573 (2d Cir.1994). A police officer who relies in good faith on a warrant issued by a neutral and detached magistrate upon a finding of probable cause is presumptively shielded by qualified immu-

nity from personal liability for damages. *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991). Police activity conducted pursuant to a warrant rarely will require any deep inquiry into reasonableness because a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith. *United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984). However, "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." *Id.* The court's inquiry into reasonableness is limited to determining whether a reasonably well-trained officer would have known that the warrants were illegal despite the magistrate's authorization. *Id.* at 922 n. 23, 104 S.Ct. at 3420 n. 23.

Appellants contend that it was not objectively reasonable for Sacco to believe the arrest warrants were valid for two reasons. First, appellants argue that the warrants were facially invalid under New York law, so that no police officer could reasonably have relied on the authority they ostensibly conferred. We reject this argument because, as the district court correctly held, a reasonably well-trained officer would not have believed the warrants were illegal despite the magistrate's authorization.

■ New York Criminal Procedure Law § 150.75(2) (McKinney 1992) provides that

> Whenever the defendant is arrested without a warrant [for possession of marijuana under Penal L. § 221.05], an appearance ticket shall promptly be issued and served upon him.... No warrant of arrest shall be issued unless the defendant has failed to appear in court as required by the terms of the appearance ticket or by the court.

It is not clear from this language whether the statute merely sets forth the procedure to be followed when a defendant is arrested without a warrant or prohibits arrests with a warrant. As the district court noted, there is no clear case law even today as to whether the statute permits the issuance of arrest warrants for possession of marijuana under

the circumstances of this case. In addition, Assistant District Attorney Gorman testified at trial that it was unclear to her whether the statute prohibited the issuance of such warrants. Accordingly, we hold that it would be unreasonable to expect a police officer in 1992 to have questioned the validity of a warrant signed by a judge under these circumstances.

Second, appellants contend that even if it was reasonable for others to rely on the validity of the arrest warrants, it was not objectively reasonable for Sacco to rely on them because (1) he lied to the magistrate about finding marijuana in the motel room, and (2) he failed to disclose the circumstances surrounding his initial stop of Simms.

■ In its answer to Question 1 of the verdict sheet the jury found that Sacco had not lied about the marijuana seizure which led to issuance of the arrest warrants. However, appellants argue that the district court improperly influenced the jury's determination on this issue by instructing the jury regarding the legal effects of its factual determination. Specifically, appellants claim plain error because Judge Larimer instructed the jury that a police officer is insulated from liability for false arrest unless the warrant was obtained on false testimony. We disagree.

As we noted in *Vinieris v. Byzantine Maritime Corp.*, "the theory espoused by some, that juries should not be informed of the legal effect of their answers in Rule 49(a) cases, has been the subject of both judicial and scholarly criticism." 731 F.2d 1061, 1065 (2d Cir.1984) (citing *Lowery v. Clouse*, 348 F.2d 252, 261 (8th Cir.1965)) (additional citations omitted). Justice Harry Blackmun, writing in *Lowery* while a court of appeals judge, reasoned as follows:

> Under Rule 49(b) the court could have submitted written interrogatories with forms for a general verdict and, of course, it could have submitted the case on a general verdict. It seems both illogical and unrealistic, particularly in the light of the discretionary aspect of the rule, to say that, because a special verdict was employed, nothing in the charge must intimate to the jury the legal effect of their answers.

*Lowery*, 348 F.2d at 261. We agree with these principles and find that the district court did not commit reversible error by instructing the jury as to the legal implications of its factual determinations. Thus, we reject appellants' argument that the charge undermined the jury's answer to Question 1.

■ The allegation that the arrest warrant was defective because Sacco's affidavit omitted information relative to the circumstances of the initial stop of Simms also fails to defeat Sacco's qualified immunity. "A plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir.1991). "In the context of a criminal case, where a magistrate has found that an affidavit presented to him showed that there was probable cause for the issuance of a warrant, a challenge to the veracity of the affidavit merits a hearing only if the challenger makes a 'substantial preliminary showing' that the affiant knowingly and intentionally made a false statement ... [that] was 'necessary to the finding of probable cause.'" *Id.* at 604 (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978)). In *United States v. Reilly*, we held that officers were not protected by the good faith exception where in their application for a warrant the officers relied on contraband obtained in a pre-warrant search they knew might be illegal and failed to disclose the details of that search. 76 F.3d 1271, 1280, *aff'd on reh'g*, 91 F.3d 331 (2d Cir.1996) (per curiam). Without that information, the magistrate could not have decided whether the officers' "conduct was sufficiently illegal and in bad faith so as to preclude a valid warrant." *Id.*

■ The common thread running through these "exceptions" to the presumption of good faith is that the omitted information must be shown to be material and necessary to a finding of probable cause. *Golino*, 950 F.2d at 871. Appellants have alleged only that Sacco failed to inform the magistrate of the reason he stopped Simms prior to discovering the marijuana. Appellants argue that Sacco stopped Simms only because

he was black and from out of town, two impermissible reasons, and that any evidence discovered as a result of that stop was tainted and could not support an arrest warrant. However, none of these allegations formed the basis of appellants' complaints, and plaintiffs offered no proof of them at trial. Moreover, appellants do not allege that Sacco failed to reveal details of how he obtained the marijuana or that he conducted an illegal search, as was the case in *Reilly.* Appellants fail to allege that Sacco omitted any information that might have contributed to the magistrate making a determination of no probable cause. Thus, the nexus between any omitted information and the probable cause determination is absent, and appellants have not met their heavy burden of showing that the magistrate's determination was incorrect.

■ Finally, appellants contend that regardless of whether the arrest warrants were valid, Sacco cannot now claim that he entered room 20 under their authority because his subjective intent on September 12, 1992, was to execute the search warrant. Sacco does not deny that he entered room 20 to execute the search warrant but claims that the arrest warrants were also valid and that he is entitled to rely on them as authority for the September 12 entry.

The Supreme Court has held that "[w]hether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon,* 472 U.S. 463, 470–71, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985) (internal quotation and citation omitted). When analyzing issues surrounding the constitutionality of searches and seizures under the Fourth Amendment, we have adopted a wholly objective "authorization" test, which states that "so long as the police are doing no more than they are legally permitted and objectively authorized to do," their actions are constitutional. *United States v. Scopo,* 19 F.3d 777, 783–84 (2d Cir.1994) (internal quotation and citation omitted).

Sacco possessed both a search warrant and arrest warrants for Simms and Cooper when he entered room 20 on September 12, 1992. Regardless of his subjective intent at the time of the entry, Sacco may rely later on any proper authority he possessed at the time of the entry. Consequently, assuming the search warrant was invalid, and further assuming Sacco could not reasonably have relied on the search warrant because he knew it already had been executed, Sacco now may rely on the arrest warrants as authority for the entry. "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). Viewing the circumstances of this case objectively, we find that Sacco justifiably may rely on the arrest warrants as authority for the September 12 entry. Thus, the district court correctly concluded that Sacco was entitled to qualified immunity.

### 2. The Scope of the Search

■ Reliance on the validity of the arrest warrants conferred qualified immunity for the September 12 entry into room 20, any search Sacco conducted incident to the arrests, and seizure of any evidence discovered in plain view in the room. However, that immunity did not cover the subsequent search of the ceiling area because the extended search exceeded the scope of the arrest warrants' authority. We agree with the district court's analysis, which found that police lawfully conducted the search of the ceiling with the consent of the motel owner.

Appellants had paid for the room until 11:00 a.m. on September 12, 1992. The arrests and removal of appellants occurred sometime after 10:00 a.m. on September 12. When the motel owner observed the police arresting appellants and removing them for an undetermined period, she reasonably concluded that appellants would not be back within the hour and retook possession of the room. *See United States v. Rahme,* 813 F.2d 31, 34–35 (2d Cir.1987) (when hotel guest's

rental period has expired or been lawfully terminated, guest does not have legitimate expectation of privacy in hotel room). We conclude that appellants had no reasonable expectation of privacy in room 20 under these circumstances and the motel owner was entitled to consent to a further search.

Based on the above findings the district court concluded that the jury's verdict resulted in judgment for Sacco. To establish a Section 1983 violation, appellants would have had to show that Sacco deprived them of the constitutional right to be free from unreasonable search or seizure. Because the district court correctly found that Sacco reasonably relied on a warrant issued by a neutral and detached magistrate to enter the motel room and obtained the consent of the motel owner rightfully in possession of the room following the arrest to conduct a further search, Sacco was entitled to qualified immunity for his actions. *See generally Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Appellants' Section 1981 and 1985 claims are premised on the contention that Sacco undertook the alleged illegal searches and seizures, planted drugs in the room and on Simms, and lied about the drugs because of appellants' race. Simms' state law claims were based on the same allegations as the federal claims. All these claims necessarily fail because we find no underlying illegality in the searches or seizures.

### C. Jury Instructions and Interrogatories
#### 1. The Search Warrant

■ Appellants argue that the court (1) committed plain error which resulted in a miscarriage of justice by submitting to the jury the question of whether a search warrant was executed and (2) erred by concluding that the answer to that question was irrelevant to the outcome. A party who fails to object to jury instructions or to the substance of special verdict questions to be put to the jury has no right to object to those matters on appeal. *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir.1992). "Absent objection, an error may be pursued on appeal only if it is 'plain error' that may result in a miscarriage of justice, or in 'obvi-

ous instances of ... misapplied law.'" *Id.* (internal quotation and citation omitted).

■ Appellants argue that Question 2 regarding whether the search warrant was executed was a legal question that should not have been submitted to the jury. Appellants concede that they failed to object to these matters at trial but argue that the court's instruction to the jury on this point constituted "plain error." Crucially, however, appellants fail to show how either submission of the question to the jury or the court's instruction to the jury on this point resulted in a miscarriage of justice so as to constitute plain error. Because we hold that Sacco was entitled to qualified immunity based on the apparent validity of the arrest warrants, the issue of execution of the search warrant (Question 2) and the related jury instructions were irrelevant and would not have affected the outcome of the trial. Assuming arguendo that the search warrant was invalid as a matter of law on September 12, 1992, Sacco still would have been entitled to qualified immunity based on the arrest warrants. Consequently, appellants have not demonstrated plain error on this issue.

#### 2. Probable Cause

■ Appellants next contend that the district court should not have submitted the question of probable cause to the jury because, given the facts in this case, probable cause was a question of law. Questions 4, 5, and 6 asked the jury to decide whether Sacco had probable cause to believe that appellants possessed cocaine. Appellants argue that because they did not dispute the fact that the officers found cocaine in the room, the only issue was ownership of the cocaine. Appellants contend that whether probable cause to arrest existed under those circumstances was a question of law for the court. Appellants ask that we reverse the jury's decision on probable cause and decide the issue as a matter of law.

■ Once again, in the absence of an objection to the questions submitted to the jury or to the court's instructions, appellants have the burden of proving "plain error," which would involve a miscarriage of justice.

1110

Appellants make no such showing. The parties agree that a determination of what constitutes probable cause is a mixed question of fact and law. A mixed question of fact and law may be submitted to the jury only if the jury is instructed as to the applicable legal standards. *Landy v. Federal Aviation Admin.*, 635 F.2d 143, 147 (2d Cir.1980).

In the present case, appellants do not dispute that the district court properly instructed the jury relative to the applicable legal standards. Moreover, appellants' contention that there were no factual issues for the jury to decide relative to probable cause rings hollow in light of their claims that Sacco planted the drugs upon which the probable cause determination was based. Therefore, we find that submission to the jury of the questions related to probable cause did not constitute plain error.

### D. Judgment as a Matter of Law

 The court entered judgment as a matter of law in favor of the Village and Hinman in response to defendants' Fed. R.Civ.P. 50 motion at the close of plaintiffs' case. The court held that no reasonable juror could find that Hinman or the Village agreed to, ratified, or authorized any impermissible act or Fourth Amendment violation on the part of Sacco. Fed.R.Civ.P. 50(a) provides that:

If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

When considering a motion for judgment as a matter of law, the court must view the evidence in the light most favorable to the non-movant, giving the non-movant the benefit of all reasonable inferences. *Padilla v. Metro–North Commuter R.R.*, 92 F.3d 117, 122 (2d Cir.1996), *cert. denied,* —— U.S. ——, —— S.Ct. ——, —— L.Ed.2d —— (1997). Judgment as a matter of law is proper where

there is "such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [the movant]" or "when there is such a complete absence of evidence" that a verdict in favor of the non-movant would be the result of sheer surmise. *Logan v. Bennington College Corp.*, 72 F.3d 1017, 1022 (2d Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 79, 136 L.Ed.2d 37 (1996). The court must deny the motion unless, "viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *Zahra v. Town of Southold,* 48 F.3d 674, 683 (2d Cir. 1995) (internal quotation and citation omitted). The same framework applies to our review of a judgment as a matter of law. *Powell v. Gardner,* 891 F.2d 1039, 1043 (2d Cir.1989).

 Appellants object to Judge Larimer's decision to grant judgment as a matter of law on the sole ground that the testimony showed that Hinman was present when Sacco entered room 20 on September 10, 1992, and knew that Sacco planned to return on September 12. Appellants argue again that Sacco could not rely on the authority of the arrest warrants for the subsequent entry, and therefore Hinman tacitly approved of a double execution of the search warrant.

As we have noted, this argument lacks merit. Because the Second Circuit utilizes a wholly objective test in determining whether a Fourth Amendment violation occurred, the subjective intent of the officers effecting the entries was irrelevant. The evidence showed that Hinman knew that the officers carried both arrest warrants and a search warrant. We agree with the district court that appellants' evidence indicating that Hinman was aware of both entries provides an insufficient evidentiary basis for liability. Because appellants did not show that Hinman committed a Fourth Amendment violation, no liability attaches to the Village for any action Hinman took in his capacity as a policymaker.

## III. CONCLUSION

We find that based on the jury's answers to the special verdict questions, defendant Sacco was entitled to qualified immunity for his actions and the district court properly dismissed the complaints against him. In addition, we find that defendants Hinman and the Village were entitled to judgment as a matter of law at the close of plaintiffs' case. We therefore affirm the judgments of the district court.